JOHN M. MASSAMENO *v.* STATEWIDE
GRIEVANCE COMMITTEE
(14930)
(14931)

PETERS, C. J., and BERDON, KATZ, DUPONT, and LAVERY, Js.

Argued April 26—decision released August 1, 1995

*Louis B. Blumenfeld*, with whom was *Sharone G. Kornman*, for the appellant in Docket No. 14930 (plaintiff).

*Steven M. Sellers*, deputy chief state's attorney, with whom, on the brief, was *Guy W. Wolf III*, senior assistant state's attorney, for the appellant in Docket No. 14931 (intervening plaintiff).

*Elizabeth F. Collins*, assistant bar counsel, with whom was *Cathy A. Dowd*, assistant bar counsel, for the appellee in both cases (defendant).

KATZ, J. This case presents an issue of first impression, whether the judicial branch of government, through the statewide grievance committee (committee), can regulate and sanction conduct by a prosecutor for the exercise of his official judgment without violating the separation of powers mandated by article second of the constitution of Connecticut. We conclude that it can.

The following facts are undisputed. In 1990, a warrant was issued for the arrest of Jacob Zamstein, a physician, in which he was charged with having sexually molested his two minor children. The warrant was signed by then state's attorney John Bailey and Judge Raymond Norko. The case was assigned to the plaintiff, assistant state's attorney John M. Massameno, for prosecution. Following a trial to the court, *Clifford, J.,*

Zamstein was found not guilty.[1] Thereafter, in December of 1991, and January of 1992, grievance complaints against Massameno were filed with the committee by attorney Mark Swerdloff, counsel for Zamstein's wife in an action seeking the dissolution of her marriage to Zamstein (Swerdloff complaint), attorney Gerald Roisman, counsel for Zamstein in that dissolution action (Roisman complaint), and Charles P. Zamstein, the brother of Zamstein (Zamstein complaint). Each complaint alleged violations of the Rules of Professional Conduct by Massameno during the course of his prosecution of Zamstein.

In April of 1992, the local grievance panel for the judicial district of Hartford-New Britain (local panel), in regard to the Swerdloff complaint, found probable cause to believe that Massameno had violated rule 4.2 of the Rules of Professional Conduct[2] by interviewing Zamstein's wife, the complaining witness in the criminal trial, in the absence of Swerdloff, the attorney representing her in the dissolution action. The local panel found no probable cause to believe that Massameno had violated additional rules of conduct as had been alleged in the Roisman and Zamstein complaints.

In August of 1992, the statewide grievance panel (statewide panel) reviewed the Roisman and Zamstein complaints and reversed the local panel's determination, finding probable cause that Massameno had violated: (1) rule 3.8 (a) of the Rules of Professional

---

[1] Prior to reaching its decision, the trial court had denied two motions for judgment of acquittal.

[2] Rule 4.2 of the Rules of Professional Conduct provides: "COMMUNICATION WITH PERSON REPRESENTED BY COUNSEL

"In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so."

Conduct[3] by prosecuting the case without probable cause to believe Zamstein was guilty; (2) rules 3.4 (c) and 3.5 (c) of the Rules of Professional Conduct[4] by requesting a psychiatric examination of the children to assess their testimonial capacity; (3) rule 4.4 of the Rules of Professional Conduct[5] by improperly conducting the cross-examination of a defense witness; and (4) rule 8.4 (d) of the Rules of Professional Conduct[6] by engaging in the foregoing alleged misconduct. On September 8, 1992, after the committee had informed him of its intention to pursue the complaints and to seek appropriate sanctions, Massameno filed an action for injunctive relief and a declaratory judgment against the committee, claiming that, as an arm of the judicial branch of government, the committee had no subject matter jurisdiction over allegations involving misconduct by a state prosecutor because he is an officer of the executive branch. Massameno claimed that the

---

[3] Rule 3.8 of the Rules of Professional Conduct provides in relevant part: "SPECIAL RESPONSIBILITIES OF A PROSECUTOR

"The prosecutor in a criminal case shall:

"(a) Refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause . . . ."

[4] Rule 3.4 of the Rules of Professional Conduct provides in relevant part: "FAIRNESS TO OPPOSING PARTY AND COUNSEL

"A lawyer shall not . . .

"(c) Knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists . . . ."

Rule 3.5 of the Rules of Professional Conduct provides in relevant part: "IMPARTIALITY AND DECORUM OF THE TRIBUNAL

"A lawyer shall not . . .

"(c) Engage in conduct intended to disrupt a tribunal."

[5] Rule 4.4 of the Rules of Professional Conduct provides: "RESPECT FOR RIGHTS OF THIRD PERSONS

"In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person."

[6] Rule 8.4 of the Rules of Professional Conduct provides in relevant part: "MISCONDUCT

"It is professional misconduct for a lawyer to . . .

"(d) Engage in conduct that is prejudicial to the administration of justice . . . ."

separation of powers principle embodied in the constitution of Connecticut, article second,[7] would be violated were the defendant allowed to investigate and discipline a state prosecutor for acts committed in that prosecutor's official capacity. That same day, the court, *M. Hennessey, J.,* issued a temporary injunction against the defendant and a stay of further grievance proceedings relating to Massameno. Thereafter, the parties agreed to continue the stay of the defendant's grievance proceedings pending resolution of the declaratory judgment action.

On September 14, 1992, the trial court, *Schaller, J.,* granted the motion to intervene as plaintiff filed by then chief state's attorney Richard N. Palmer. In his complaint, Palmer represented the following: "2. The Chief State's Attorney and the several State's Attorneys are Constitutional Officers established by Article XXIII of the Amendments to the Connecticut Constitution. 3. Under the provisions of the Constitution and the Statutes of the State of Connecticut, the Chief State's Attorney is the administrative head of the Division of Criminal Justice, an agency established by the Constitution in the Executive Department. . . . 17. In order to preserve and protect the plaintiff's above-referenced rights, and to prevent the above-referenced harm to the plaintiff, it is necessary that the jurisdiction of the Statewide Grievance Committee to investigate and hear complaints made against plaintiff

---

[7] The constitution of Connecticut, article second, as amended by article twenty-eight of the amendments, provides: "(Distribution of Powers. . . .)

"The powers of government shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another. The legislative department may delegate regulatory authority to the executive department; except that any administrative regulation of any agency of the executive department may be disapproved by the general assembly or a committee thereof in such manner as shall by law be prescribed."

Massameno and any other attorney in the Division of Criminal Justice be judicially determined. . . ." In his prayer for relief, Palmer requested in part: "1. A declaratory judgment determining whether and to what extent the Statewide Grievance Committee has jurisdiction to investigate, discipline, or recommend the suspension or removal of prosecutorial officials within the Division of Criminal Justice; 2. A declaratory judgment determining whether and to what extent the Statewide Grievance Committee has jurisdiction to investigate, discipline, or recommend the suspension or removal of a Senior Assistant State's Attorney pursuant to a complaint alleging that the state's attorney violated the Rules of Professional Conduct during the course of a criminal prosecution . . . ."

At trial before the court, *Wagner, J.,* the parties[8] stipulated to the facts underlying the allegations in the grievance complaints. Additionally, during three days of hearings, the plaintiffs presented the testimony of five prosecutors that the prosecutorial conduct under investigation by the defendant was within the scope of prosecutorial power and was part of the standard practice of prosecutors in Connecticut. Massameno testified that the subjection of prosecutors to grievance proceedings would substantially encroach on the time that prosecutors would otherwise be spending on their official duties. Furthermore, he and several other prosecutors testified that grievance proceedings would have a chilling effect on the exercise of their independent prosecutorial judgment. Finally, the plaintiffs presented unchallenged evidence regarding the disciplinary system that operates within the division of criminal justice (division).[9]

___

[8] As a result of Palmer's successful intervention, both Palmer and Massameno were the plaintiffs in the action, and the committee was the sole defendant. John M. Bailey was later substituted as the intervenor-plaintiff. Hereinafter, all references to the plaintiffs are to Bailey and Massameno.

[9] Palmer testified that he was empowered by the collective bargaining agreement with the state's prosecutors to discipline deputy assistant state's

Although it recognized the "special role that prosecutors play," the trial court concluded that the separation of powers clause did not preclude the judiciary from supervising and disciplining prosecutors. Accordingly, the trial court rendered judgment in favor of the defendant. Thereafter, the plaintiffs filed separate appeals to the Appellate Court. We transferred the cases to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 4023. We affirm the judgment of the trial court.

## I

Before reaching the merits of the plaintiffs' constitutional claims, we must resolve whether the trial court had subject matter jurisdiction over this case even though the criminal justice commission (commission) was not given notice of the pendency of the action.[10]

---

attorneys and assistant state's attorneys, a power he shared with the twelve state's attorneys. Palmer stated that, pursuant to this power, he recently had terminated the employment of a state prosecutor. Palmer also had initiated an internal investigation of the allegations against Massameno. The internal investigation was still pending at the time of his testimony, due in part to transcript delays.

The internal investigative process, which Palmer viewed as sufficient to protect the public interest, includes review of applicable statutes, rules of discovery, the Rules of Professional Conduct, the ABA Standards for the Prosecution Function, the NDAA National Prosecution Standards and the policies of the division of criminal justice. Moreover, he added that the division trains its prosecutors in prosecutorial ethics and that investigations are conducted by a trained inspector, who reports to the chief state's attorney. The internal process of the division, which does not include "lay involvement," is conducted in confidence and complainants are notified of the outcome of the investigation. The chief state's attorney maintains files on such complaints. In the case of the termination of a prosecutor, the chief state's attorney would advise the committee, or its local panel, of the results, although this procedure has not been formalized.

[10] This issue was first raised, sua sponte, by this court, by letter dated January 11, 1994. See *Hartford Principals' & Supervisors' Assn.* v. *Shedd*, 202 Conn. 492, 497, 522 A.2d 264 (1987) (court may question jurisdiction on own motion).

Practice Book § 390 (d) provides in pertinent part that "[t]he court will not render declaratory judgments upon the complaint of any person . . . (d) unless all persons having an interest in the subject matter of the complaint are parties to the action or have reasonable notice thereof." Failure to comply with § 390 (d) deprives the trial court of subject matter jurisdiction to render a declaratory judgment. *Serrani* v. *Board of Ethics*, 225 Conn. 305, 308, 622 A.2d 1009 (1993).[11] "[J]urisdiction . . . is a question of law and cannot be waived or conferred by consent either in the trial court, or here. . . . Once brought to the attention of the court, regardless of the form of the motion, it must be acted upon." (Internal quotation marks omitted.) Id. We conclude that § 390 (d) did not deprive the trial court of jurisdiction over this case.

All parties contend that the commission is not an interested party whose knowledge of, or participation in, the present declaratory judgment action was required in order to confer upon the trial court subject matter jurisdiction over this controversy. The plaintiffs argue that the disciplinary power conferred on the commission by General Statutes § 51-278b[12] does not

[11] "[T]he bringing of a declaratory judgment action [however] is not itself precluded by a failure to comply with the notice requirement," unlike other jurisdictional defects. *Serrani* v. *Board of Ethics*, supra, 225 Conn. 309 n.5. Such a defect does not require dismissal of the action on remand. Rather, "the plaintiff may ask for an order of notice in order to comply with the procedural requirements of the Practice Book with respect to individuals whose identity might otherwise be difficult to ascertain. Once there has been compliance with § 390 (d), the trial court will have plenary authority to render whatever judgment it then deems appropriate." Id., 309–10.

[12] General Statutes § 51-278b provides: "REMOVAL OF PROSECUTORIAL OFFICIALS. PROCEDURE. (a) Whenever the Criminal Justice Commission has reason to believe or is of the opinion that the chief state's attorney is guilty of misconduct, material neglect of duty or incompetence in the conduct of his office, it shall make such investigation as it deems proper, and shall prepare a statement in writing of the charges against such official summoning him to appear before the commission at a date named and show cause why he should not be removed from office. Such official shall have

give it an interest sufficient to entitle it to notice, under § 390 (d), of any action seeking a declaratory judgment concerning the jurisdiction of the committee over the professional conduct of an assistant state's attorney.

The plaintiffs contend that the powers under § 51-278b were delegated to the chief state's attorney, as the chief of the division; see General Statutes § 51-275;[13] under a collective bargaining agreement with the prosecutor's union. See 33 H.R. Proc., Pt. 2, 1990 Sess., p. 309 (favorable report on House Resolution entitled "Resolution Proposing Approval Of An

the right to appear with counsel and witnesses and be fully heard. If after full hearing of all evidence, the commission finds that the evidence warrants the removal of such official, the commission shall make a written order to that effect and shall cause a copy thereof to be given such official and shall also file a copy thereof with the secretary of the state. Upon the filing of such copy with the secretary of the state, the office held by such official shall become vacant, and the commission may thereupon proceed to fill such vacancy in the manner provided by law. For purposes of this subsection, 'Criminal Justice Commission' means the members of the commission other than the chief state's attorney.

"(b) No deputy chief state's attorney, state's attorney, assistant state's attorney or deputy assistant state's attorney may be removed from office except by order of the Criminal Justice Commission after due notice and hearing. A recommendation for removal from office may be initiated by the chief state's attorney or the appropriate state's attorney.

"(c) The Criminal Justice Commission may discipline for just cause after due notice and hearing by reprimand, demotion or suspension with or without pay from his office up to fifteen days, a deputy chief state's attorney or state's attorney. A recommendation for discipline may be initiated by the chief state's attorney. The chief state's attorney may discipline any assistant state's attorney or deputy assistant state's attorney who assists him or the appropriate state's attorney may discipline any assistant state's attorney or deputy assistant state's attorney who assists him, for just cause after due notice and hearing by reprimand, demotion or suspension with or without pay from his office up to fifteen days."

[13] General Statutes § 51-275 provides: "DEFINITIONS. As used in this chapter, and sections 5-142, 5-190a and 54-152, the following terms shall have the meanings indicated unless the context requires a different meaning: 'Chief state's attorney' means the chief of the division of criminal justice; 'deputy chief state's attorney' means the assistant chief of the division of criminal justice; 'division' means the division of criminal justice."

Arbitration Award Between The State Of Connecticut Division Of Criminal Justice And Connecticut Prosecutors, Local 1437, Council 4, AFSCME, AFL-CIO." The collective bargaining agreement substituted for the commission the chief state's attorney and/or the applicable state's attorney for the purposes of § 51-278b. According to the plaintiffs, this agreement had the effect of superseding the statute; see *State College American Assn. of University Professors* v. *State Board of Labor Relations*, 197 Conn. 91, 495 A.2d 1069 (1985); *Board of Trustees* v. *Federation of Technical College Teachers*, 179 Conn. 184, 425 A.2d 1247 (1979); and, consequently, the commission did not thereafter have the disciplinary power that would otherwise make it an interested party under § 390 (d). The plaintiffs further contend that, although the commission fully retains the disciplinary power conferred by § 51-278b on the chief state's attorney, the deputy chief state's attorneys, the state's attorneys and the executive assistant state's attorneys, none of whom are subject to the collective bargaining agreement, that power is not at issue in this controversy.

The plaintiffs also argue that the commission has no powers to investigate and prosecute criminal cases that would otherwise make it an interested party under § 390 (d). General Statutes § 51-277 (a)[14] directs that

[14] General Statutes § 51-277 provides in relevant part: "POWERS AND DUTIES OF DIVISION. (a) The division shall exercise all powers and duties with respect to the investigation and prosecution of criminal matters conferred upon or required of it by this chapter, or conferred upon or required of state's attorneys, assistant state's attorneys and deputy assistant state's attorneys of the superior court by the common and statutory law of this state.

"(b) The division shall take all steps necessary and proper to prosecute all crimes and offenses against the laws of the state and ordinances, regulations and bylaws of any town, city, borough, district or other municipal corporation or authority.

"(c) The division, through the chief state's attorney, shall participate on behalf of the state in all appellate, post-trial and postconviction proceed-

the division "shall exercise all powers and duties with respect to the investigation and prosecution of criminal matters . . . required of state's attorneys, assistant state's attorneys and deputy assistant state's attorneys . . . ." The plaintiffs contend, therefore, that it is the chief state's attorney, as chief of the division; General Statutes § 51-275; who has the rights and powers with respect to the investigation and prosecution of criminal matters, not the commission.

The defendant agrees with the plaintiffs that the commission does not have a sufficient interest in the litigation that requires notice under Practice Book § 390 (d) and further states that, even if the commission has "a generic interest in the claim, the interest is represented by and protected by the Chief State's Attorney as the administrative head of the division of criminal justice." We agree with the defendant's second argument and conclude that whatever interest the commission may have in this litigation is represented by and protected by Bailey as the administrative head of the division. See General Statutes §§ 51-275, 51-277. As the administrative head of the division, Bailey represents the division as an entity within the executive branch. The commission is sufficiently within the division and its interests are so coterminous with the division that it is, in effect, being represented in this litigation. This case does not present an issue of whether only certain members of the division are sub-

ings arising out of the initiation of any criminal action whether or not the proceedings are denominated civil or criminal for other purposes.

"(d) The chief state's attorney and each deputy chief state's attorney may sign any warrants, information, applications for grand jury investigations and applications for extradition; and (1) upon application made by a state's attorney, and for good cause shown, after showing no other state's attorney is available, the chief state's attorney may be appointed by the Criminal Justice Commission to represent the state in criminal trials in lieu of any state's attorney, assistant state's attorney or deputy assistant state's attorney in any judicial district. . . ."

ject to the grievance process, or whether the defendant can examine conduct by some prosecutors and not others. Rather, the division, through Bailey, is claiming that the actions of the defendant are interfering with the division and all of its members. In connection with this litigation, he represents all interests and rights of the executive branch as related to the division, and the presence of the commission, therefore, is not required for a determination of whether the defendant has the jurisdiction to proceed.

## II

Our conclusion that the trial court had jurisdiction to hear the plaintiffs' claims allows us to decide the merits of their claims on appeal. The plaintiffs argue that by reviewing grievance complaints against a prosecutor for conduct "involving the exercise of official judgment or function," the defendant unconstitutionally usurps the powers given exclusively to the executive branch of government. They invoke the separation of powers provision of article second of the constitution of Connecticut, which provides in relevant part: "The powers of government shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another." We reject their claim.

We previously have held that the primary purpose of this constitutional doctrine is to prevent commingling of different powers of government in the same hands. *Stolberg* v. *Caldwell*, 175 Conn. 586, 598, 402 A.2d 763 (1978), appeal dismissed sub nom. *Stolberg* v. *Davidson*, 454 U.S. 958, 102 S. Ct. 496, 70 L. Ed. 2d 374 (1981). The constitution achieves this purpose by prescribing limitations and duties for each branch that are essential to each branch's independence and

performance of assigned powers. *University of Connecticut Chapter, American Assn. of University Professors* v. *Governor*, 200 Conn. 386, 394, 512 A.2d 152 (1986). This court has stated: "It is axiomatic that no branch of government organized under a constitution may exercise any power that is not explicitly bestowed by that constitution or that is not essential to the exercise thereof." *Kinsella* v. *Jaekle*, 192 Conn. 704, 723, 475 A.2d 243 (1984).

The separation of powers doctrine serves a dual function: it limits the exercise of power within each branch, yet ensures the independent exercise of that power. Nevertheless, it cannot be rigidly applied always to render mutually exclusive the roles of each branch of government. As we have recognized, "the great functions of government are not divided in any such way that all acts of the nature of the function of one department can never be exercised by another department; such a division is impracticable, and if carried out would result in the paralysis of government. Executive, legislative and judicial powers, of necessity overlap each other, and cover many acts which are in their nature common to more than one department." *In re Application of Clark*, 65 Conn. 17, 38, 31 A. 522 (1894), superseded by statute on other grounds as stated in *State* v. *Sanabria*, 192 Conn. 671, 696, 474 A.2d 760 (1984).

Our goal is to ascertain the degree to which the exercise of various powers "comport[s] with, or threaten[s] to undermine, either the *independence* and *integrity* of one of the branches . . . or the ability of each to fulfill its mission in checking the others so as to preserve the *interdependence* without which independence can become domination." (Emphasis in original.) L. Tribe, American Constitutional Law (2d Ed. 1988) § 2-2, p. 18. Consequently, we have stated that, in deciding whether one branch's actions violate the constitutional mandate of the separation of powers doctrine, the court will con-

sider if the actions constitute: (1) an assumption of power that lies exclusively under the control of another branch; or (2) a significant interference with the orderly conduct of the essential functions of another branch. *Bartholomew* v. *Schweizer*, 217 Conn. 671, 676, 587 A.2d 1014 (1991).

The plaintiffs argue that the grievance procedures violate both prongs of the test. The defendant contends that the judicial branch has exercised its own inherent and constitutional powers over the administration of justice and officers of the court and that, even if this incidentally affects the function of the executive branch, the judicial branch has not substantially interfered with the essential executive function of the investigation and prosecution of criminal matters. See *Eielson* v. *Parker*, 179 Conn. 552, 560, 427 A.2d 814 (1980) (no constitutional infirmity if branch is exercising its own constitutional power, even if, in so doing, that branch "affects" function of another branch). We agree with the defendant.

## A

It is well established that the judicial branch has the inherent power to investigate the conduct of an officer of the court. *Grievance Committee* v. *Broder*, 112 Conn. 263, 273, 152 A. 292 (1930). "The Superior Court possesses inherent authority to regulate attorney conduct and to discipline the members of the bar. See *State* v. *Jones*, 180 Conn. 443, 448, 429 A.2d 936 (1980) [overruled on other grounds, *State* v. *Powell*, 186 Conn. 547, 442 A.2d 939 (1982)]; *Lublin* v. *Brown*, 168 Conn. 212, 228, 362 A.2d 769 (1975); *Heiberger* v. *Clark*, [148 Conn. 177, 182–83, 169 A.2d 652 (1961)]; *Grievance Committee of the Bar of New Haven County* v. *Sinn*, 128 Conn. 419, 422, 23 A.2d 516 (1941); *In re Kone*, 90 Conn. 440, 442, 97 A. 307 (1916); *In re Durant*, 80 Conn. 140, 147, 67 A. 497 (1907). The judiciary has the

power to admit attorneys to practice and to disbar them; *In re Application of Griffiths*, 162 Conn. 249, 252, 294 A.2d 281 (1972), rev'd on other grounds, 413 U.S. 717, 93 S. Ct. 2851, 37 L. Ed. 2d 910 (1973); *Heiberger* v. *Clark*, supra, 185–86; *In re Durant*, supra [147]; to fix the qualifications of those to be admitted; *In re Application of Griffiths*, supra [252]; *Heiberger* v. *Clark*, supra [185–86]; and to define what constitutes the practice of law. *State Bar Assn.* v. *Connecticut Bank & Trust Co.*, [145 Conn. 222, 232, 140 A.2d 863 (1958)]. In the exercise of its disciplinary power, the Superior Court has adopted the Code of Professional Responsibility. Practice Book, pp. 1–52 (as amended 1982).[15]" *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo*, 190 Conn. 510, 523, 461 A.2d 938 (1983).

In addition, a comprehensive disciplinary scheme has been established to safeguard the administration of justice, and designed to preserve public confidence in the system and to protect the public and the court from unfit practitioners. *In re Durant*, supra, 80 Conn. 147–48. General Statutes § 51-90g and the parallel rules of practice "authorize the grievance committee to act as an arm of the court in fulfilling this responsibility." *Statewide Grievance Committee* v. *Rozbicki*, 211 Conn. 232, 239, 558 A.2d 986 (1989). These rules "exist within the broader framework of the relationship between attorneys and the judiciary. . . . This unique position as officers and commissioners of the court . . . casts attorneys in a special relationship with the judiciary and subjects them to its discipline." (Citations omitted; internal quotation marks omitted.) Id., 237–38.

"An attorney as an officer of the court in the administration of justice, is continually accountable to it for the manner in which he exercises the privilege which

---

[15] The Code of Professional Responsibility was repealed on October 1, 1986, at the same time that the current Rules of Professional Conduct, as approved by the judges of the Superior Court, became effective.

has been accorded him. His admission is upon the implied condition that his continued enjoyment of the right conferred is dependent upon his remaining a fit and safe person to exercise it, so that when he, by misconduct in any capacity, discloses that he has become or is an unfit or unsafe person to be entrusted with the responsibilities and obligations of an attorney, his right to continue in the enjoyment of his professional privilege may and ought to be declared forfeited. *In re Peck*, 88 Conn. 447, 450, 91 A. 274 (1914). Therefore, [i]f a court disciplines an attorney, it does so not to mete out punishment to an offender, but [so] that the administration of justice may be safeguarded and the courts and the public protected from the misconduct or unfitness of those who are licensed to perform the important functions of the legal profession. . . . *Statewide Grievance Committee* v. *Botwick,* 226 Conn. 299, 307, 627 A.2d 901 (1993)." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Shluger*, 230 Conn. 668, 674, 646 A.2d 781 (1994).

1

Like all attorneys, prosecutors serve as officers of the court. Therefore, since the days of the Connecticut colony, they have been subject to judicial control. We must, however, trace the history of prosecutorial power in Connecticut to understand the extent to which the judiciary may permissibly interfere with that power. Unlike its federal counterpart, state prosecutorial power arose initially from the common law. The principle of public prosecution for crimes against the sovereign originated in colonial times. Prosecutors were appointed by and answerable to the sovereign because public justice could not depend upon the financial resources of victims. *State* v. *Keena,* 64 Conn. 212, 214, 29 A. 470 (1894). Because prosecutors were viewed as ministers of justice, their duties were considered quasi-judicial and "not purely those of an executive officer."

*State* v. *Moynahan*, 164 Conn. 560, 568, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219 (1973).

In *Moynahan,* we explored the connection between the judiciary and the prosecutorial function in determining the constitutionality of then General Statutes § 51-175, which authorized judges of the Superior Court to appoint prosecutors.[16] To decide that constitutional question, we needed to decide whether the appointment authority was a proper judicial function in light of the totality of the prosecutorial function.[17] We stated that "[i]n determining whether the appointment of a state's attorney by the judges of the Superior Court is a means appropriate to the exercise of the judicial power, a controlling consideration is the functional consistency of such an appointment with the duties and powers of the judicial department as distinct from those of the executive department.

"The functions of a state's attorney are not purely those of an executive officer. As a representative of the people of the state, he is under a duty not solely to obtain convictions but, more importantly, (1) to determine that there is reasonable ground to proceed with a criminal charge; *State* v. *Hayes,* 127 Conn. 543, 581, 18 A.2d 895 [(1941), superseded by statute on other

---

[16] In 1975, General Statutes § 51-175 was transferred to chapter 886 and renumbered as § 51-278.

[17] We recognized that "[u]nder the constitution of the state of Connecticut, appointments, other than those whose mode is prescribed, are governed by the division of governmental powers. *State* v. *Stoddard,* 126 Conn. 623, 627, 13 A.2d 586 [1940]; *Norwalk Street Ry. Co.'s Appeal,* 69 Conn. 576, 586, 37 A. 1080 [1897]. 'Our own Constitution like most constitutions, provides for certain elective and legislative appointments; but except in the cases specified, appointment to office is an exercise of executive power, unless used as a means appropriate to the exercise of power granted to another department; and when so used it is not the exercise of executive power within the meaning of the Constitution.' *Norwalk Street Ry. Co.'s Appeal,* supra, 595." *State* v. *Moynahan,* supra, 164 Conn. 567–68.

grounds as stated in *State* v. *Burns,* 194 Conn. 469, 473, 481 A.2d 1077 (1984)]; (2) to see that impartial justice is done the guilty as well as the innocent; and (3) to ensure that all evidence tending to aid in the ascertaining of the truth be laid before the court, whether it be consistent with the contention of the prosecution that the accused is guilty. *State* v. *Harris,* 147 Conn. 589, 598, 164 A.2d 399 (1960); *State* v. *Zimnaruk,* 128 Conn. 124, 127, 20 A.2d 613 (1941).

"The state's attorney, thus, is an officer charged with important duties and responsibilities in the administration of justice. Such duties of a state's attorney are entirely consistent with judicial power as prescribed by our constitution. *State* v. *Hayes,* supra, [127 Conn. 581].

"This court in *Hopson's Appeal,* 65 Conn. 140, 146, 31 A. 531 [1894], held that when a function lies on the borderline of the division between executive and judicial power, the exercise of that power by the judiciary may be constitutionally valid and the practical construction of this exercise of power, both before and after the adoption of the constitution, may be safely accepted. The history of [General Statutes § 51-175] the statute authorizing judicial appointment of the state's attorney demonstrates a longstanding commitment to this practice. . . . The delegation of this appointment power to the courts since 1704 is, in accordance with the rule of *Hopson's Appeal,* supra, [146,] constitutionally valid and the appointment of state's attorneys by the judicial department is appropriate within the scope of the judicial power confided to the courts by the constitution. Exercise of that power is incident to legitimate judicial functions. The constitutionality of this grant of power was clearly recognized by this court in *Adams* v. *Rubinow,* 157 Conn. 150, 163 n., 251 A.2d 49 [1968], and is no longer open to question." *State* v. *Moynahan,* supra, 164 Conn. 568–70.

After our decision in *Moynahan*, the legislature substantially changed the organization of the office of the public prosecutor. In 1973, the legislature created the division as an agency within the executive branch to be responsible for the investigation and prosecution of all criminal cases in Connecticut. See General Statutes § 51-276.[18] Subsequently, article fourth of the Connecticut constitution was amended by article twenty-three of the amendments (amendment twenty-three) to make the division a part of the executive branch and to provide for the establishment of a commission to oversee the appointment of prosecutors.[19] Contemporaneously with the passage of this constitutional amendment, the legislature specified the duties and powers of the division regarding the investigation and prosecution of criminal matters. See General Statutes § 51-277. Additionally, the legislature implemented amendment twenty-three by giving the commission full managerial

[18] General Statutes § 51-276 provides: "DIVISION ESTABLISHED. There is hereby established the division of criminal justice within the executive department, which shall be in charge of the investigation and prosecution of all criminal matters in the superior court. The division of criminal justice shall be an agency within the executive department with all management rights except appointment of all state's attorneys."

[19] The constitution of Connecticut, amendment twenty-three, provides: "(Division of criminal justice. Appointment of state's attorneys by a criminal justice commission.)

"Article fourth of the constitution is amended by adding a new section to read as follows:

"There shall be established within the executive department a division of criminal justice which shall be in charge of the investigation and prosecution of all criminal matters. Said division shall include the chief state's attorney, who shall be its administrative head, and the state's attorneys for each judicial district, which districts shall be established by law. The prosecutorial power of the state shall be vested in a chief state's attorney and the state's attorney for each judicial district. The chief state's attorney shall be appointed as prescribed by law. There shall be a commission composed of the chief state's attorney and six members appointed by the governor and confirmed by the general assembly, two of whom shall be judges of the superior court. Said commission shall appoint a state's attorney for each judicial district and such other attorneys as prescribed by law."

power over personnel, including the right to discharge. General Statutes § 51-278b; 27 S. Proc., Pt. 8, 1984, Sess., pp. 2862–65, remarks of Senator Howard T. Owens, Jr. The legislative history of the statute and the constitutional amendment reflects the intent to separate the executive power to appoint a prosecutor from the judicial power to adjudicate a case and to avoid the appearance of conflicts and favoritism in the appointment of prosecutors. Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1984 Sess., pp. 383–84, remarks of chief state's attorney Austin McGuigan; 27 H.R. Proc., Pt. 12, 1984 Sess., pp. 4311–13, remarks of Representative Richard D. Tulisano.

Importantly, although there was considerable debate over the composition of the commission,[20] and the extent to which the attorney general would have power to pursue criminal prosecutions in certain regulatory offenses,[21] no legislative history relating to any of these amendments suggests an intent to limit the extent of the judiciary's common law authority over prosecutors. There is no suggestion of an intent to deprive the judicial branch of its traditional jurisdiction over a prosecutor's law license. Indeed, both the statute and constitution state that only licensed attorneys may be appointed to serve as prosecutors. Conn. Const., amend. XXIII; General Statutes § 51-278a.[22] Moreover,

---

[20] See, e.g., 27 H.R. Proc., Pt. 12, 1984 Sess., pp. 4314–18.

[21] See 27 H.R. Proc., Pt. 12, 1984 Sess., pp. 4324–26; 27 S. Proc., Pt. 8, 1984 Sess., p. 2863; Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1984 Sess., pp. 362–68, and Pt. 3, pp. 805–10.

[22] General Statutes § 51-278a provides: "QUALIFICATIONS OF PROSECUTORIAL OFFICIALS. FULL-TIME DUTIES. (a) The chief state's attorney, each deputy chief state's attorney and each state's attorney, assistant state's attorney and deputy assistant state's attorney shall, at the time of his appointment be an attorney-at-law and the chief state's attorney, each deputy chief state's attorney and each state's attorney shall have been admitted to the practice of law for at least three years.

"(b) The chief state's attorney, each deputy chief state's attorney, and each state's attorney shall devote his full time to the duties of his office,

although in 1991, the legislature approved a collective bargaining agreement, which superseded § 51-278b (b) and (c) and delegated the commission's powers under § 51-278b to discipline and remove a prosecutor to the chief state's attorney and other applicable state's attorneys, the legislature did not amend the statutes that recognize judicial authority over attorneys. See General Statutes § 51-90 et seq.[23]

Therefore, although amendment twenty-three undeniably identifies the state's attorney and his assistants as executive branch officials, the actual duties and responsibilities of the state's attorney have changed very little since 1704. Indeed, nothing in amendment twenty-three or in the ensuing legislation creating the commission eliminated or reduced the broad range of authority that the judiciary has held over its officers or in any way relieved prosecutors from the ethical and regulatory duties imposed on them by our disciplinary rules. This court has long recognized that prosecutors, like every other attorney, maintain their position as officers of the court when performing their role as prosecutors. *State* v. *Cohane*, 193 Conn. 474, 501–502, 479 A.2d 763, cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 331 (1984); *State* v. *Haskins*, 188 Conn.

shall not otherwise engage in the practice of law and shall not be a partner, member or associate of a law firm.

"(c) Each assistant state's attorney and deputy assistant state's attorney appointed to serve on a full-time basis shall devote his full time to the duties of his office, shall not engage in the private practice of law and shall not be a partner, member or associate of a law firm. No part-time assistant state's attorney, no part-time deputy assistant state's attorney and no partner or associate of a law firm of which such attorney is a partner or associate may engage in the private practice of criminal law."

[23] The ability of the legislature to eliminate judicial branch powers and thereby create "a significant interference with the orderly conduct of the essential functions of another branch"; *Bartholomew* v. *Schweizer*, supra, 217 Conn. 676; is not at issue in this case. We point to the absence of such attempts, however, as evidence that there was no intent by the legislature body to interfere with, undermine or otherwise limit the power of the judicial branch to safeguard the integrity of the court's power.

432, 456, 450 A.2d 828 (1982); *State* v. *Ferrone*, 96 Conn. 160, 168–69, 113 A. 452 (1921). That position did not change following the creation of the commission or the removal of the appointment authority from the judicial branch. See *State* v. *Dolphin*, 195 Conn. 444, 452, 488 A.2d 812, cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88 L. Ed. 2d 84 (1985).[24] Consequently, nothing exists in either amendment twenty-three or legis-

[24] In addition to these disciplinary proceedings, the judiciary can review claims of prosecutorial misconduct in connection with its supervision of criminal trials. In *State* v. *Cohane*, supra, 193 Conn. 474, we held that the failure to disclose an exculpatory police report constituted reversible error. Prosecutorial misconduct that corrupted the truth seeking function of the trial compelled a new trial based not solely on constitutional principles, but under our supervisory authority as well. We held that "[a]n appellate court has a certain inherent supervisory authority over the administration of justice . . . in the trial courts below that permits action to deter prosecutorial misconduct which is unduly offensive to the maintenance of a sound judicial process. . . . This court . . . has long been of the view that it is ultimately responsible for the enforcement of court rules in prosecutorial misconduct cases. *State* v. *Ferrone*, 97 Conn. 258, 270, 116 A. 336 (1922)." (Citations omitted; internal quotation marks omitted.) Id., 499–500.

The plaintiffs contend that the court's ability to overturn a conviction due to prosecutorial misconduct; see id.; is sufficient supervision of prosecutors. We disagree. The judicial branch has a duty to defend the integrity of the judicial system. Overturning convictions based on prosecutorial misconduct is only part of the process. When analyzing claims on appeal, the court examines the fairness of the trial, not solely the culpability of the prosecutor. *State* v. *Williams*, 204 Conn. 523, 539–40, 529 A.2d 653 (1987). The assessment of the culpability of the prosecutor is left to the disciplinary process. The courts in this state have consistently recognized the applicability of attorney disciplinary proceedings to prosecutorial misconduct allegations. In *State* v. *Raymond*, 88 Conn. 148, 150, 89 A. 1118 (1914), the court noted that prosecutorial misconduct could result in the prosecutor's displacement or suspension as an attorney. In *State* v. *Pelletier*, 196 Conn. 32, 36, 490 A.2d 515 (1985), Justice Shea, in a concurring opinion, stated that he believed that the "more appropriate remedy" for the prosecutorial misconduct at issue would have been a recommendation for disciplinary proceedings. See also *State* v. *Binet*, 192 Conn. 618, 629, 473 A.2d 1200 (1984) ("[c]rucial considerations in appellate adjudication of such questions are not only the need, where demonstrated, to discipline prosecutors where reprehensible conduct is present but to assure ultimate fairness to the defendant").

lation to alter our conclusion that "[t]he functions of a state's attorney are not purely those of an executive officer." *State* v. *Moynahan*, supra, 164 Conn. 568.

2

Nevertheless, the plaintiffs claim that prosecutorial power to investigate and prosecute all criminal matters conferred upon or required of it by the legislature and the common law lies solely in the chief state's attorney, the state's attorneys and their assistants and that it may not be independently exercised by any other entity, including the attorney general. See General Statutes § 3-125.[25] They argue, consequently, that these prosecutorial functions belong exclusively to the executive branch and that in asserting jurisdiction over the law license of a prosecutor for prosecutorial functions, the judicial branch has assumed power in violation of the constitutional mandates of separate magistracy. The defendant argues in response that the investigation and prosecution of criminal cases can be considered a dual function between the executive and judicial branches of government because "the administration of justice is the primary purpose in any proceeding involving the liberty interest of a citizen." Alternatively, the defendant contends that even were we to decide that the executive branch has exclusive power over the investigation and prosecution of criminal mat-

---

[25] In his brief, Bailey stated: "Connecticut's Attorney General was created by Chapter CXCI of the Public Acts of 1897. Charles Phelps, Connecticut's first Attorney General, was appointed in January, 1899, nearly two hundred years after the appointment of the first state's attorney. See 1 Op. Atty. Gen. (January 9, 1901). In 1942, Attorney General [Francis A.] Pallotti, concurring with a 1917 opinion on the same issue, declined to issue an opinion on an interpretation of criminal law. 'While perhaps not to the same extent as formally, misapprehension as to the scope of the jurisdiction and duties of the Attorney General still persists, and it has been necessary to decline to give advice on many purely local or personal questions, as well as matters relating to criminal laws and prosecutions thereunder.' 22 Op. Atty. Gen. 452 (September 30, 1942) and citation therein."

ters, the judicial and executive branches have overlapping interests in the administration of justice and in the actions of an officer of the court.

Because we find this last argument persuasive, this case does not turn on whether we designate the investigation and prosecution of criminal cases as belonging exclusively to the executive branch or whether the judicial and executive branches exercise concurrent jurisdiction. All parties recognize that unlike other constitutional officers, prosecutors must perform their constitutional function nearly exclusively in the forum of another branch of government, the judiciary. They must also be licensed to practice law by that other branch of government, and in effect, they must depend upon that other branch for proper recognition of their role. As we stated previously, it has long been recognized that prosecutors maintain their positions as officers of the court like all other attorneys when they are performing their role as prosecutors; *State* v. *Haskins*, supra, 188 Conn. 456; *State* v. *Ferrone*, supra, 96 Conn. 168–69; and that they must act within recognized principles of law and standards of justice. *State* v. *Cohane*, supra, 193 Conn. 501–502. Therefore, the authority underlying a prosecutor's powers merges with his or her complimentary obligations to the judicial process.[26]

[26] We note that federal prosecutors, as officers of the court, have been held to be subject to the disciplinary jurisdiction of the court. *United States* v. *Thomas*, 320 F. Sup. 527, 528 (D.D.C. 1970); *Waters* v. *Barr*, 103 Nev. 694, 697, 747 P.2d 900 (1987). Some courts have also rejected claims that the supremacy clause and immunity statutes prevent state disciplinary boards from reviewing conduct of federal prosecutors. *United States* v. *Ferrara*, 847 F. Sup. 964, 968–69 (D.D.C 1993), aff'd, 54 F.3d 825 (D.C. Cir. 1995); *In re Matter of Doe*, 801 F. Sup. 478, 485–88 (D.N.M. 1992). Additionally, courts in sister states have exercised their powers to consider prosecutorial misconduct and to discipline prosecutors. See *Price* v. *State Bar of California*, 30 Cal. 3d 537, 638 P.2d 1311, 179 Cal. Rptr. 914 (1982); *In re Friedman*, 76 Ill. 2d 392, 392 N.E.2d 1333 (1979); *In re Shafir*, 92 N.J. 138, 455 A.2d 1114 (1983); *In re Weishoff*, 75 N.J. 326, 382 A.2d 632 (1978); *In re Conduct of Burrows*, 291 Or. 135, 629 P.2d

3

Finally, the plaintiffs argue that the judicial branch's attempts to maintain control over the license to practice law interferes with the executive branch's exclusive power to discipline itself. Furthermore, to the extent that the plaintiffs have standing to make the claim, they argue that the judicial branch's efforts to supervise and discipline prosecutors infringes on the legislature's power to impeach as set forth in the constitution of Connecticut, article ninth, §§ 1, 3.[27] The defendant responds that the judicial branch's jurisdiction over the license of a prosecutor is separate and distinct from the executive branch's own disciplinary system and, furthermore, that the judicial branch's jurisdiction is not eradicated by the legislative impeachment power.

First, we find nothing in the history of the office of the state's attorney that has required the judicial branch to abdicate its inherent role in the supervision of the bar in favor of the executive branch or that has vested the exclusive power to discipline a prosecutor

820 (1981); *In re Disciplinary Proceedings Against Mauch*, 107 Wis. 2d 557, 319 N.W.2d 877 (1982). The plaintiffs have not pointed to any decisions in which a court has held that disciplinary jurisdiction of the court constitutes an unconstitutional infringement on the executive branch of government.

[27] Article ninth, § 1, of the Connecticut constitution provides: "(Power of impeachment.)

"Sec. 1. The house of representatives shall have the sole power of impeaching."

Article ninth, § 3, of the Connecticut constitution provides: "(Liability to impeachments.)

"Sec. 3. The governor, and all other executive and judicial officers, shall be liable to impeachment; but judgments in such cases shall not extend further than to removal from office, and disqualification to hold any office of honor, trust or profit under the state. The party convicted, shall, nevertheless, be liable and subject to indictment, trial and punishment according to law."

in the executive branch.[28] Second, although we recognize the plaintiffs' contention that disbarment interferes with a prosecutor's ability to serve as a prosecutor; see Conn. Const., amend. XXIII; General Statutes § 51-278a; there is nothing specifically in the impeachment provision of the constitution to suggest that it is the exclusive means by which a constitutional officer may be *disciplined* or *sanctioned* under all circumstances.

To support his claim of unconstitutional judicial infringement of his authorized responsibilities, Massameno refers to *Adams* v. *Rubinow*, supra, 157 Conn. 150, 164–66, in which we held that the legislature could not seek to shorten the constitutionally mandated four year term of a probate judge by giving the chief court administrator the authority to suspend the judge's power of office. We reasoned that the removal of the power of the office was tantamount to impeachment, which was an exclusive function of the legislature.

---

[28] Relying on comments in a concurring opinion by the late Chief Justice Burger in *United States* v. *Payner*, 447 U.S. 727, 737, 100 S. Ct. 2439, 65 L. Ed. 2d 468 (1980), Massameno asserts that, because the state constitution provides for self-discipline, the judicial branch cannot review allegations of prosecutorial misconduct. Burger stated: "Orderly government under our system of separate powers calls for internal self-restraint and discipline in each Branch; this Court has no general supervisory authority over operations of the executive Branch as it has with respect to the federal courts." The late Chief Justice's comments, however, were expressed in a concurring opinion in which the court acknowledged the inherent supervisory power of the federal courts over criminal cases, but held that the United States District Court for the Northern District of Ohio had exceeded its authority in barring evidence in violation of the fourth amendment to the United States constitution. The court ruled that inherent judicial authority did not mean that the court could exercise standardless discretion. Id., 733, 736. While Chief Justice Burger recognized the need for self-restraint and discipline within the branches, he made no comment about the specific regulatory authority of a state judicial branch over an officer of the court, pursuant to standards established in the Rules of Professional Conduct.

Because the case before us does not involve the disbarment of a prosecutor, we see no reason to decide whether, under the logic of *Adams*, impeachment as provided by article ninth, § 3, is the exclusive means by which a prosecutor can be removed. Instead, we examine that decision to determine whether it equally precludes other forms of discipline.

Confining our inquiry to that issue, we find that *Adams* does not advance the plaintiffs' position because it did not alter the judicial branch's ability to protect the public by restraining a probate judge from serving on the basis of misconduct, incompetence or other good cause. On the contrary, we specifically stated that "[i]t is very important to bear in mind that the question before us is very different from one involving the power of the Superior Court for the necessary protection of the public, in a proper proceeding, to impose a temporary restraint on the exercise of judicial powers by a probate judge because of criminal misconduct, or during any period of mental or physical incapacity or for other good cause." Id., 170. That decision, therefore, does not stand for the proposition that the impeachment provisions bar all other forms of possible sanctions. *Council on Probate Judicial Conduct re: James H. Kinsella*, 193 Conn. 180, 206, 476 A.2d 1041 (1984). We conclude that the impeachment provisions do not bar other forms of discipline and leave for another day the issue of whether they shield a prosecutor from the sanction of disbarment.[29]

[29] We note that there is a growing body of case law in which courts have held that disbarment does not violate the exclusive impeachment provisions of the various state constitutions at issue. The Kentucky Court of Appeals in *Commonwealth ex rel. Pike County Bar Assn.* v. *Stump*, 247 Ky. 589, 57 S.W.2d 524 (1933), rejected a prosecutor's claim that the court could not discipline him because he could be removed from office only by impeachment. The court found that the office of a prosecutor does not shield the prosecutor from any failures to observe the oath and duties of an attorney at law. Id., 591–92. The court ruled that notwithstanding the fact that he

The judiciary is ultimately responsible for the enforcement of the court rules and must use its inherent power over the administration of justice to prevent action that undermines the integrity of the system. *State* v. *Ubaldi*, 190 Conn. 559, 570–72, 462 A.2d 1001, cert. denied, 464 U.S. 916, 104 S. Ct. 280, 78 L. Ed. 2d 259 (1983). Because the functions of a prosecutor clearly are an integral part of the judicial process, and because the judicial branch has an overlapping interest in the administration of justice, the judicial branch must be able to exercise its own power of supervision over the judicial process and the attorney who must be accountable to the court.

It is in part due to the recognition that prosecutors are an integral part of the judicial system that courts have granted absolute immunity from civil actions to prosecutors. *Malley* v. *Briggs*, 475 U.S. 335, 342, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986); *Imbler* v. *Pachtman*, 424 U.S. 409, 420, 430, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976). "Prosecutorial immunity derives from the immunity attached to judicial proceedings." *DeLaurentis* v. *New Haven*, 220 Conn. 225, 241, 597 A.2d 807 (1991). Such immunity covers acts that were performed by a prosecutor as an integral part of the

was subject to impeachment, the prosecutor was also subject to discipline based on the law license. The loss of the office by the prosecutor would only be a consequence of the loss of the license. Id., 592; see also *In re Disbarment of McCowan*, 177 Cal. 93, 104–105, 170 P. 1100 (1917); *In re Norris*, 60 Kan. 649, 657–59, 57 P. 528 (1899); *In re Voss*, 11 N.D. 540, 551–52, 90 N.W. 15 (1902); *In re Jones*, 70 Vt. 71, 86–87, 39 A. 1087 (1898). In *Ramsey* v. *Board of Professional Responsibility of the Supreme Court of Tennessee*, 771 S.W.2d 116, 118 (Tenn.), cert. denied, 493 U.S. 917, 110 S. Ct. 278, 107 L. Ed. 2d 258 (1989), the prosecutor claimed that the court's jurisdiction over his law license violated separation of powers principles and violated the exclusive impeachment provisions of the state constitution. The court rejected the arguments based on its inherent power over the law license. Id., 118–19. The court also found that "[d]isciplinary proceedings which result in disbarment or suspension from the practice of law are not equivalent to impeachment. A disbarment is a removal of a law license; an impeachment is the removal from office." Id.

judicial process. Id. A major consideration in allowing absolute immunity for prosecutors has been the recognition that disciplinary procedures exist to regulate prosecutorial misconduct. *Imbler* v. *Pachtman*, supra, 429. These traditional attorney disciplinary procedures eliminate the danger that absolute immunity will be used as a shield for prosecutorial misconduct. *DeLaurentis* v. *New Haven*, supra, 246–47.

In sum, we conclude that the judicial branch may exercise jurisdiction to supervise and discipline prosecutors concurrently with the executive branch. As this court held in *In re Application of Clark*, supra, 65 Conn. 38: "[T]hese great functions of government are not divided in any such way that all acts of the nature of the functions of one department can never be exercised by another department; such a division is impracticable, and if carried out would result in the paralysis of government. Executive, legislative, and judicial powers, of necessity overlap each other, and cover many acts which are in their nature common to more than one department. These great functions of government are committed to the different magistracies in all their fullness, and involve many incidental powers necessary to their execution, even though such incidental powers in their intrinsic character belong more naturally to a different department."

## B

Because we reject the notion that the judicial branch's supervision of prosecutors represents an assumption of power that lies exclusively under the control of the executive branch, we turn to the issue of whether, by reviewing grievance complaints filed against prosecutors, the defendant significantly interferes with the orderly conduct of the essential functions of the executive branch in violation of article second of the constitution of Connecticut. See *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo*, supra, 190 Conn. 522.

Both plaintiffs argue that the mere threat of review by the defendant through the grievance review procedures, which they concede are of general application to all other members of the bar, significantly interferes with the orderly conduct of an essential function of the executive branch.[30] In a broad-brush attack, Bailey claims that the grievance process "diverts a prosecutor's attention and energy from the important business of enforcing the criminal law," that "prosecutors may be distracted from the performance of their duties for fear of a baseless grievance," and that "the prospect of judicial investigation and discipline of a prosecutor for his or her prosecutorial duties has a profound chilling effect upon the exercise of independent prosecutorial discretion." Massameno echoes these claims and

[30] Both plaintiffs agree that the defendant has the ability to discipline a prosecutor whose misconduct occurs when he or she is *not* performing a prosecutorial function. Bailey uses as an illustration a prosecutor who, contrary to the proscription of § 51-278a, engages in the private practice of law. He states that such attorney "is fully subject to the jurisdiction of the Committee for such conduct because [it] is not uniquely prosecutorial, but is like that exercised by all attorneys." He does not explain, however, what is meant by "such conduct." We are unclear whether Bailey would agree that a prosecutor could be disciplined both by the division and the committee for the violation of § 51-278a itself, as distinct from any actual misconduct committed in the course of the prosecutor's private practice.

In deciding whether an act was a prosecutorial function, the plaintiffs suggest that we look to the area of sovereign immunity to gauge whether an act was within the scope of one's employment. See, e.g., General Statutes §§ 4-165 and 53-39a. As our case law makes clear, that task is not always easy. See *Antinerella* v. *Rioux*, 229 Conn. 479, 487–99, 642 A.2d 699 (1994). The circumstances of this case do not require that we engage in that kind of analysis.

As part of his claim that the defendant has no authority over a prosecutor when he is performing a prosecutorial function, Massameno even includes prosecutorial conduct that occurs in the presence of the court. According to Massameno, only the court's contempt powers are available. See Practice Book §§ 987 through 991. Bailey, on the other hand, acknowledges the defendant's authority over prosecutorial conduct in the courtroom and challenges only the defendant's authority over prosecutorial conduct that occurs outside the presence of the court. Bailey cites to *State* v. *Raymond*, 88 Conn. 148, 150, 89 A. 1118 (1914), in which this court, after commenting upon

also raises a concern about having to disclose confidential information in responding to the complaints. Finally, Massameno complains that adverse publicity surrounding grievance matters involving prosecutors also creates a constitutional level of functional interference by the judicial branch with executive branch functions.[31]

We examine this issue in the context in which it was brought, as an action for a declaratory judgment in which the plaintiffs have asserted that the defendant lacks jurisdiction to conduct any grievance proceedings whatsoever. Because of the procedural posture of this

---

the failure of both the defense attorney and the prosecutor to obey rulings of the court, and after reversing the defendant's conviction for indecent assault, went on to observe that the trial judge could have acted in personam as to the attorneys by ordering displacement or suspension. Although he suggests "that such judicial discipline would raise separation of powers concerns if it were based upon uniquely prosecutorial conduct," Bailey acknowledges, nonetheless, that *Raymond* "illustrates the general point that a court always has the authority and jurisdiction to control the conduct of proceedings and attorneys appearing before it. Indeed, any other rule would threaten core values underlying the administration of justice which the prosecutors of this state, like the judges of Connecticut, are constitutionally bound to preserve."

The defendant argues that drawing distinctions between prosecutorial misconduct that occurs in the presence of the court and prosecutorial misconduct that occurs outside the courtroom is often unworkable and thus unsound. The defendant emphasizes that in 1989, the rules of practice were amended to give the defendant jurisdiction over acts of misconduct occurring in or out of the actual presence of the court. See Practice Book §§ 27B (d) (1), 27F (a), 30 and 31 (a). These amendments were enacted in part to prevent alleged acts of misconduct from avoiding review due to the difficulty of defining what constitutes the "actual presence" of the court. We note that the hypothetical situations involving this kind of dispute are countless. We are not required to consider the impact of these distinctions to resolve this case.

[31] Massameno also argues that any suspension of a prosecutor by the judicial branch will functionally interfere with the investigation and prosecution of criminal matters. Because this case does not involve suspension, we leave any consideration of suspension and its consequences for another day.

case, the plaintiffs have deprived the trial court of an opportunity to make findings of fact in regard to the underlying assertions of misconduct contained within the grievance complaints. This court does not act as a fact finder. *Connecticut National Bank* v. *Giacomi*, 233 Conn. 304, 334, 659 A.2d 1166 (1995). Therefore, we decide in this case only whether the defendant, by merely subjecting prosecutors to grievance proceedings, creates a significant interference with the orderly conduct of the essential functions of the executive branch of government in violation of article second of the constitution of Connecticut. We conclude that it does not.

The plaintiffs' first argument is that, regardless of the allegations at issue, time constraints require that prosecutors remain free from the interference of the judiciary for failing to act within the rules of the judicial system. We conclude that the complaints regarding workload pressures, although probably accurate, do not create an unconstitutional functional interference. Workload pressures are legitimate concerns for all attorneys faced with grievance proceedings, but hardly serve as a basis for concluding that the judicial branch, as a matter of constitutional law, lacks jurisdiction over a prosecutor.

We similarly are unpersuaded by the plaintiffs' concerns about confidentiality. We recognize that the concern about interference with executive processes stems in part from the confidential nature of prosecutorial decisions. The confidential nature of the charging process helps to preserve the important function of deterrence by preventing the public from knowing which crimes will be emphasized in enforcement. See R. Frase, "The Decision to File Federal Criminal Charges: A Quantitative Study of Prosecutorial Discretion," 47 U. Chi. L. Rev. 246, 282 (1980). Confidentiality also allows prosecutors to use flexible policies and approaches.

See N. Abrams, "Internal Policy: Guiding the Exercise of Prosecutorial Discretion," 19 UCLA L. Rev. 1, 32–33 (1971). Sensitive material contained within a response to a grievance complaint, however, can be sealed upon motion. See Practice Book § 221.[32] Not only did Massameno not seek that protection, but he made the entire record, including material that was confidential pursuant to Practice Book § 32, public by entering the documents as full exhibits before the trial court without asking that any of the material be sealed.

We find the plaintiffs' complaints about publicity to be equally unconvincing. Public scrutiny accompanies all public servants. There is nothing unique about prosecutors in this regard. Indeed, the similarities between the chief state's attorney and the attorney general are obvious: both are constitutional officers of the executive branch and both, therefore, maintain the dual position of constitutional officer and member of the bar. Thus as in *Commission on Special Revenue* v. *Freedom of Information Commission*, 174 Conn. 308, 387 A.2d 533 (1978), in which we applied the Code of Professional Responsibility to the attorney general and to assistant attorneys general to determine whether their conflict

---

[32] Practice Book § 221 provides: "PROTECTIVE ORDER

"Upon motion by a party from whom discovery is sought, and for good cause shown, the court may make any order which justice requires to protect a party from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition after being sealed be opened only by order of the court; (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court."

of interest precluded their office from simultaneously representing two commissions in the same litigation, we are unpersuaded that prosecutors will be unduly hampered by potential publicity.

Additionally, we disagree with the plaintiffs' characterization of the defendant's argument favoring dual accountability as an attack on either the disciplinary procedures utilized by the commission or the removal authority controlled by the chief state's attorney. We do not interpret the defendant's claim in that way. The issue is not whether the prosecutors have any legitimate right to self discipline, but whether the judicial branch also has a legitimate interest in maintaining the integrity of the judicial process and in exercising its own inherent power over a prosecutor's law license. We have concluded that it does.

The last argument advanced by the plaintiffs is that the grievance process compromises the independent judgment of the prosecutor. Massameno argues that, in order to protect prosecutorial judgment from the judiciary, "only executive officers must determine the policies of a state or federal prosecutorial office." According to the plaintiffs, dual accountability must be uniformly rejected, even without consideration of the specific allegations in a particular grievance proceeding. For authority, Massameno cites to what is known as "the Thornburgh memorandum," issued by then United States attorney general Richard Thornburgh to attorneys of the Justice Department of the United States in June of 1989, in which Thornburgh authorized prosecutors to contact represented individuals in the course of law enforcement activities and declared the intent of the department to resist, on supremacy clause grounds, local attempts to regulate federal law enforcement techniques through application of the American Bar Association Model Code of Professional Conduct.

The Thornburgh memorandum provides no support for the plaintiffs' argument. That memorandum did not contend that judicial regulation of attorneys infringed on the powers of the executive branch, but rather that *state* regulation of attorneys infringed on the powers of the *federal* government. The memorandum provides no guidance on the issue we face here, and indeed, implicitly accepts the fact that the *federal* courts could regulate the conduct of federal prosecutors, without infringing the separation of powers principles in the federal constitution. If federal court supervision of federal prosecutors does not interfere with federal executive branch activities, state court supervision of state prosecutors equally does not interfere with state executive branch activities.[33]

There can be no doubt that "[t]he doctrine of separation of powers requires judicial respect for the independence of the prosecutor." *United States* v. *Simpson,* 927 F.2d 1088, 1091 (9th Cir. 1991). As a public official representing the state, "[the state's attorney] is not only an officer of the court, like every attorney, but is also a high public officer, representing the people of the State, who seek impartial justice for the guilty as much as for the innocent. In discharging his most important duties, he deserves and receives in peculiar degree the support of the court and the respect of the citizens of the county." *State* v. *Ferrone,* supra, 96

---

[33] We note that the Thornburgh memorandum has been held to be invalid even as an attempt to bar state supervision of federal prosecutors. As the court in *United States* v. *Ferrara,* 847 F. Sup. 964, 969 (D.D.C. 1993), recognized: "[A] policy memorandum issued by the head of an agency simply is not the equivalent of 'federal law.' " Therefore, the *Ferrara* court concluded that the memorandum did not preempt state disciplinary authority or support the conclusion that a violation of local Rules of Professional Conduct was necessary and proper to the functions of a federal prosecutor. Additionally, the court stated that even if a violation of the rules were seen as "necessary and proper" to the functions of a federal prosecutor, Congress nevertheless had intended that federal lawyers be subject to regulation by the state bars of which they are members.

Conn. 168. Prosecutors have enormous discretion in deciding which citizens should be prosecuted and for what charges they are to be held accountable. *United States* v. *Cox,* 342 F.2d 167 (5th Cir.), cert. denied sub nom. *Cox* v. *Hauberg,* 381 U.S. 935, 85 S. Ct. 1767, 14 L. Ed. 2d 700 (1965); *State* v. *Corchado,* 200 Conn. 453, 460, 512 A.2d 183 (1986); *State* v. *Carr,* 172 Conn. 608, 376 A.2d 74 (1977); *State* v. *Mitchell,* 164 N.J. Super. 198, 395 A.2d 1257 (1978). The prosecutor is also the one to decide whether to offer a certain plea or disposition. *United States* v. *Redondo-Lemos,* 955 F.2d 1296 (9th Cir. 1992); *Newman* v. *United States,* 382 F.2d 479 (D.C. Cir. 1967); *State* v. *O'Neill,* 200 Conn. 268, 280, 511 A.2d 321 (1986); *State* v. *Lloyd,* 185 Conn. 199, 202, 440 A.2d 867 (1981). Only prosecutors can seek wiretaps; General Statutes § 54-41b; or assist the governor in extradition proceedings. General Statutes § 54-160. In short, we are not unmindful of the fundamental importance of the unique role they play in our society.

Because of this role, we also recognize that judicial intrusion may disproportionately impact particular aspects of the prosecutorial function. For example, the basis of prosecutorial charging decisions is one area not generally well suited for broad judicial oversight because it "involve[s] exercises of judgment and discretion that are often difficult to articulate in a manner suitable for judicial evaluation." *United States* v. *Redondo-Lemos,* supra, 955 F.2d 1299. The judicial branch, and, concomitantly, the defendant are not in the best position to consider the various factors that prosecutors weigh, such as the strength of the evidence, the visibility of the crime, the availability of resources and possible deterrent effects. Nor is the judicial branch anxious to consider the validity of various rationales advanced for particular charging decisions. Thus, in a particular grievance proceeding, a prosecutor subject to investigation may be able to allege that,

because of separation of powers principles, different substantive or procedural rules apply to him or her than to the average attorney.

Merely because some governmental decisions are not well suited for judicial review, however, does not mean that all decisions should escape scrutiny. For example, we look at whether a prosecutor's plea bargaining or charging practice had a discriminatory impact and, if so, whether the prosecutor was motivated by a discriminatory purpose in charging the defendant. See *Wayte* v. *United States*, 470 U.S. 598, 608–609, 105 S. Ct. 1524, 84 L. Ed. 2d 547 (1985); *United States* v. *Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974). We also look at allegations that a prosecutor has exercised his or her discretion to select jurors on the basis of impermissible racial considerations. See *Batson* v. *Kentucky*, 476 U.S. 79, 87–88, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). As troublesome as this sort of judicial entanglement may be, the defendant, who is not seeking to control the exercise of prosecutorial discretion, must have the authority to evaluate a claim that this discretion was used improperly. The unique role of prosecutors does not, therefore, remove them altogether from the requirements of the canons of ethics or the Rules of Professional Conduct.

The plaintiffs have launched a wholesale attack on the judicial branch's authority to evaluate a claim of unethical conduct by a prosecutor. Rather than asking this court to examine and evaluate particular rules of professional conduct as being beyond the authority of the judicial branch of government, the plaintiffs challenge, as a violation of the separation of powers provision of article second of the constitution of Connecticut, any and all grievance proceedings pertaining to prosecutors. They do not acknowledge the power the judiciary shares with the executive branch to investigate, discipline or recommend the suspension or removal of

prosecutors. They argue that such power lies exclusively within the executive branch of government and, furthermore, that any attempt by the judicial branch to regulate the ethical conduct of prosecutors is an unconstitutional interference with the essential functions of another branch of government. We reject their unconditional attack and conclude that the separation of powers doctrine does not obliterate the obligation and authority of the judicial branch to investigate and discipline prosecutors.

The judgment of the trial court is affirmed.

In this opinion PETERS, C. J., and DUPONT and LAVERY, Js., concurred.

BERDON, J., concurring. I agree with much of the majority's well reasoned analysis and with the conclusion that the statewide grievance committee has jurisdiction to regulate and sanction the conduct of a state's attorney who violates the Rules of Professional Conduct. I write separately because the majority fails to acknowledge explicitly that the prosecutorial function, including the office of the state's attorney, is exclusively within the executive branch of our state government.

Article twenty-three of the amendments to the constitution of Connecticut (amendment twenty-three) provides in pertinent part: "There shall be established within *the executive department* a division of criminal justice which shall be in charge of the investigation and prosecution of all criminal matters. Said division shall include the chief state's attorney, who shall be its administrative head, and the state's attorneys for each judicial district, which districts shall be established by law. . . ." (Emphasis added.) Therefore, the plain and unambiguous language of the state constitution establishes that the office of the state's attorney, which encompasses all prosecutorial responsibilities, is part of the executive branch of the state government.

There are important reasons for placing the office of the state's attorney within the executive branch. Until 1984, when amendment twenty-three was incorporated into the constitution, the chief state's attorney and his staff were appointed by the judiciary. *State* v. *Moynahan*, 164 Conn. 560, 569, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219 (1973). It became apparent, however, that the judicial appointment and removal of prosecutors, who are charged with the essentially executive function of enforcing criminal laws, projected the appearance of impropriety. Cf. id., 567. Thus, during hearings on the proposed amendment, then attorney general Joseph I. Lieberman testified that "the power to appoint state prosecutors should not be vested in the same judges before whom those prosecutors practice. That system has created the appearance of a conflict of interest." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1984 Sess., p. 362. The framers of amendment twenty-three expressed the same reasoning. For example, Representative Richard D. Tulisano, the cochair of the judiciary committee, stated that "[i]t is wrong that both the prosecution and [the] adjudication of crime should be in one branch of government." 27 H.R. Proc., Pt. 12, 1984 Sess., p. 4313. Amendment twenty-three was adopted solely to eliminate this conflict. The decision of the majority today changes nothing in this respect—the office of the state's attorney remains exclusively within the executive branch of the state government.

Nevertheless, as the majority points out, it is well established that the judicial branch of government has the power to regulate who may practice law in this state and, in doing so, the judges of the Superior Court may establish rules of professional conduct that govern lawyers and officers of the court inside as well as outside the court room. *State Bar Assn.* v. *Connecticut Bank*

*& Trust Co.*, 145 Conn. 222, 234, 140 A.2d 863 (1958). "An attorney 'as an officer of the court in the administration of justice, is continually accountable to it for the manner in which he exercises the privilege which has been accorded him.' *In re Peck*, 88 Conn. 447, 450, 91 A. 274 (1914). This 'unique position as officers and commissioners of the court . . . casts attorneys in a special relationship with the judiciary and subjects them to its discipline.' (Citations omitted.) *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo*, 190 Conn. 510, 524, 461 A.2d 938 (1983). Because of this special relationship, '[w]e have a continuing duty "to make it entirely clear that the standards of conduct . . . of the members of the profession of the law in Connecticut have not changed, and that those standards will be applied under our rules of law, in the exercise of a reasonable discretion . . . ." *Grievance Committee* v. *Broder*, [112 Conn. 263, 278, 152 A. 292 (1930)].' *In re Application of Pagano*, 207 Conn. 336, 344–45, 541 A.2d 104 (1988). This court will neither neglect nor attempt to avoid that responsibility." *Statewide Grievance Committee* v. *Rozbicki*, 211 Conn. 232, 237–38, 558 A.2d 986 (1989).

State's attorneys, as lawyers, are subject to the same Rules of Professional Conduct established by the judiciary; see *State* v. *Cohane*, 193 Conn. 474, 501, 479 A.2d 763, cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 331 (1984); and the exercise of this jurisdiction over the professional conduct of an attorney is essential to the administration of justice. See *Statewide Grievance Committee* v. *Rozbicki*, supra, 211 Conn. 235. Therefore, although the office of the state's attorney is within the executive branch, to the extent that an officer of the division of criminal justice is also an attorney licensed to practice law, that person's conduct is regulated by the judiciary. There may be instances when that regulation, through disciplinary proceedings,

may infringe on the executive function of the prosecutorial office. Not every infringement, however, constitutes a violation of the separation of powers doctrine under article second of the Connecticut constitution.[1] *University of Connecticut Chapter, American Assn. of University Professors* v. *Governor*, 200 Conn. 386, 394, 512 A.2d 152 (1986) ("separation of powers doctrine cannot always be rigidly applied").

In order to constitute an unconstitutional violation of the separation of powers doctrine, the action of one branch of government—in this case the judiciary—must *significantly interfere* with the orderly conduct of the other branch—in this case the prosecutorial function of the executive branch. *Adams* v. *Rubinow*, 157 Conn. 150, 160–61, 251 A.2d 49 (1968); *Bartholomew* v. *Schweizer*, 217 Conn. 671, 676, 587 A.2d 1014 (1991) (effectively overruling *State* v. *Clemente*, 166 Conn. 501, 511, 353 A.2d 723 [1974], which held that the separation of powers clause of the state constitution is violated when one branch of government intrudes upon another "in an area which lies exclusively under [its] control").

Permitting disciplinary proceedings against a prosecutor for unprofessional conduct will not necessarily result in the violation of the separation of powers doctrine under the state constitution. For example, if a state's attorney blatantly and maliciously initiates a prosecution with no probable cause, it can hardly be said that the disciplinary proceedings before the judicial branch would result in an infringement of the executive prosecutorial powers. This would be true regardless of whether the disciplinary proceeding

---

[1] The constitution of Connecticut, article second, provides: "The powers of government shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another."

resulted in a reprimand, suspension or disbarment of the person, as an *attorney*, licensed by the judiciary, to practice law in Connecticut.[2] On the other hand, there may be circumstances in which the professional conduct of a state's attorney is not subject to judicial review because it would significantly interfere with the function of the executive branch, but that determination must be made on a case-by-case basis.

Accordingly, I agree with the majority that the statewide grievance committee, as the disciplinary arm of the Superior Court, has jurisdiction to continue with the proceeding to determine, in the first instance, whether the plaintiff John M. Massameno's conduct violated the Rules of Professional Conduct and, if so, whether he is subject to discipline.

---

[2] There are instances in which a potential conflict between the judicial and executive branches can be avoided by granting a remedy to a party aggrieved by the egregious conduct of a state's attorney. See, e.g., *Batson* v. *Kentucky*, 476 U.S. 79, 84, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986) (granting criminal defendant new trial as result of prosecutor's purposeful discrimination in using preemptory challenge to prevent African-American from serving on jury); *State* v. *Couture*, 194 Conn. 530, 565, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985) (granting criminal defendant new trial as result of unprofessional remarks made by state's attorney in summation before jury); see also *State* v. *Holloway*, 209 Conn. 636, 553 A.2d 166, cert. denied, 490 U.S. 1071, 109 S. Ct. 2078, 104 L. Ed. 2d 643 (1989). Nevertheless, such remedial relief may be insufficient to vindicate the integrity of the judicial branch, and disciplinary proceedings against the state's attorney, as an attorney, may also be required. B. Gershman, Prosecutorial Misconduct (1994 Rev.) § 13.6.