PER CURIAM.
**625 *731 The plaintiffs, Daniel Jacob D'Attilo, Cathy M. D'Attilo, and Domenic D'Attilo,[1] appeal[2] from the judgment of the trial court dismissing the present **626 action, which was brought against the defendants, the Statewide Grievance Committee, the Fairfield Grievance Panel (Fairfield panel), and the Stamford-Norwalk Grievance Panel (Stamford panel),[3] seeking a writ of mandamus and injunctive relief in challenging their handling of the plaintiffs' grievance complaints against seven attorneys. On appeal, the plaintiffs claim that they were statutorily and classically aggrieved by certain decisions of those local panels dismissing their grievance complaints against five of those attorneys, and by certain other actions of the Statewide Grievance Committee with respect to the proceedings against the other two. We disagree and, accordingly, affirm the judgment of the trial court dismissing the present action for lack of standing.
The record reveals the following relevant facts and procedural history. On March 21, 2003, the plaintiffs retained the law firm of Koskoff, Koskoff & Bieder, P.C. (Koskoff firm), to represent them in a civil action, claiming that medical malpractice during Daniel's birth had left him disabled for life. In January, 2012, after a jury had awarded the plaintiffs a verdict of $58.6 million, the plaintiffs ultimately settled their medical malpractice case for $25 million. In February, 2012, while still represented by the Koskoff firm, the plaintiffs retained the law firm of Day Pitney, LLP (Day Pitney), to advise them on numerous financial and tax issues related to the settlement. A dispute subsequently arose between the plaintiffs and their attorneys from both firms concerning **627 the fees and expenses charged; the plaintiffs claimed that the Koskoff firm attorneys defrauded them and illegally misappropriated funds by retaining 28 percent of the $25 million settlement in violation of the 10.64 percent fee cap set by General Statutes § 52-251c, which governed their retainer agreement, as well by charging more than $600,000 in litigation expenses for which they had no original invoices or other proof of validity. The plaintiffs further claimed that the Day Pitney attorneys committed legal malpractice when they set up a trust for Daniel in a way that caused him to have to pay them $65,000 annually in trustee fees, potentially *732 for decades, including by the creation of a foundation that would be funded by at least $5 million upon Daniel's death, to be controlled by the Day Pitney attorneys or their successor, who would receive "unspecified legal fees 'forever.' " In December, 2014, the plaintiffs brought a civil action against the Koskoff firm, Day Pitney, and seven individual attorneys at those law firms alleging conversion, a violation of § 52-251c(g), and statutory theft in violation of General Statutes § 52-564. In that action, the plaintiffs are seeking both treble damages and the complete return of all legal fees paid. That action remains pending.
In February, 2015, the plaintiffs filed grievance complaints against five attorneys from the Koskoff firm and two attorneys from Day Pitney, alleging that those attorneys had committed numerous violations of the Rules of Professional Conduct while representing them, in particular the misappropriation of client funds. The complaints against the Koskoff firm attorneys were referred to the Fairfield panel, which, on July 17, 2015, dismissed claims against William M. Bloss, James D. Horwitz, and Joel H. Lichtenstein, but found probable cause of unethical conduct against Kathleen L. Nastri and Michael Koskoff. The complaints against the Day Pitney attorneys, Keith Bradoc Gallant and Rebecca **628 Iannantuoni, were referred to the Stamford panel, which dismissed them on August 26, 2015.
Because the Fairfield panel had found probable cause to believe that Koskoff and Nastri had engaged in unethical conduct, it referred those grievances to the Statewide Grievance Committee for further action. The chief disciplinary counsel offered to settle the grievances in exchange for a reprimand for failing to provide the plaintiffs with a full accounting. Following several hearings on the grievances, the Statewide Grievance Committee rejected the plaintiffs' requests for a proposed decision pursuant to General Statutes §§ 51-90g(f)[4] and 51-90h(a) and (b),[5] informing the plaintiffs that it no longer issued proposed decisions, and stating that its actions are "governed by the Practice Book rules and not the General Statutes." Ultimately, on November 18, 2016, the Statewide Grievance Committee issued a final decision reprimanding Nastri for failing to keep billing records and failing to explain to the plaintiffs that a particular provision in the retainer agreement drafted by Koskoff, which affected the applicability of the fee cap statute, could be subject to different interpretations.
**629 On March 3, 2017, the Statewide Grievance Committee reprimanded Koskoff for failing to keep proper records. Throughout these proceedings, *733 the Statewide Grievance Committee denied the plaintiffs' attempts to supplement the record, and the chief disciplinary counsel refused their requests to submit certain evidence unfavorable to the Koskoff firm attorneys.
While the grievance proceedings were pending, in February, 2016, the plaintiffs brought this action seeking a writ of mandamus and injunctive relief. In the first count of the complaint, the plaintiffs claimed that the decisions of the Fairfield panel and the Stamford panel to dismiss the grievance complaints were void as a matter of law because those local panels had failed to forward the complaints to the Statewide Grievance Committee, as required by Practice Book § 2-32(i)(2),[6] for further review pursuant to **630 Practice Book § 2-34A (b)(1).[7] The plaintiffs sought a writ of mandamus directing the local panels to reissue their opinions, removing the dismissals, and forwarding them and the case files to the Statewide Grievance Committee. In the second count of the complaint, the plaintiffs asked the trial court to invoke its inherent authority to oversee attorney conduct, enjoin the Statewide Grievance Committee from taking any further action, and to take control of the pending grievance proceedings.
The defendants moved to dismiss the amended complaint on February 19, 2016. The trial court held oral arguments on the motion to dismiss on April 11, 2016. On July 18, 2016, the trial court issued a memorandum of decision granting the motion to dismiss, concluding that the plaintiffs lacked standing because they were neither statutorily nor classically aggrieved, and rendered judgment accordingly.[8] This appeal followed.
*734 On appeal, the plaintiffs contend that the trial court improperly concluded that they, as complainants in an attorney disciplinary proceeding, lack standing to seek court intervention in those proceedings. The plaintiffs claim, in particular, standing to address the Statewide Grievance Committee's deprivation of their statutory rights under § 51-90g(a),[9] which requires review of local **631 panels' findings of lack of probable cause, and an infringement of their statutory right to a proposed decision under §§ 51-90g(f) and 51-90h(a) and (b). The plaintiffs further contend that the trial court improperly declined to use its inherent power to intervene in the disciplinary process, given the "deplorable" allegations against the attorneys and the Statewide Grievance Committee. They argue that they are classically aggrieved and statutorily aggrieved by implication.
Our examination of the record on appeal and the briefs and arguments of the parties persuades us that the judgment of the trial court should be affirmed. Because the trial court's memorandum of decision fully addresses the arguments raised in the present appeal, we adopt its concise and well reasoned decision as a statement of the facts and the applicable law on the issues. See **632 D'Attilo v. Statewide Grievance Committee , Superior Court, judicial district of Hartford, Docket No. CV-16-6065012-S, 2016 WL 4253478 (July 18, 2016) (reprinted at 329 Conn. 624, 188 A.3d 727 [2018] ). It would serve no useful purpose for us to repeat the discussion therein contained. See, e.g., Woodruff v. Hemingway , 297 Conn. 317, 321, 2 A.3d 857 (2010).
The judgment is affirmed.
APPENDIX
DANIEL JACOB D'ATTILO ET AL. v. STATEWIDE GRIEVANCE COMMITTEE ET AL.*
Superior Court, Judicial District of Hartford
File No. CV-16-6065012-S
Memorandum filed July 18, 2016
Proceedings
Memorandum of decision on defendants' motion to dismiss. Motion granted .
Howard Altschuler , for the plaintiffs
Jane R. Rosenberg , assistant attorney general, for the defendants.
*735 Opinion
SHERIDAN, J., This is an action seeking an order of mandamus and injunctive relief in connection with the dismissal of grievance complaints brought against five attorneys that had previously represented the plaintiffs. The defendants have moved to dismiss the plaintiffs' action based on lack of subject matter jurisdiction, asserting that the plaintiffs do not have standing to challenge the dismissal of the grievance complaints because they are neither statutorily nor classically **633 aggrieved. For the reasons set forth below, the motion is granted.
I
FACTS
Cathy and Domenic D'Attilo are the parents of Daniel D'Attilo. In 2003, they retained the law firm of Koskoff, Koskoff, & Bieder, P.C. (KK & B) to represent them in connection with medical negligence that occurred during Daniel's birth. Suit was commenced and, after trial, the jury awarded the D'Attilos $58.6 million in compensatory damages. In January, 2012, while the verdict was on appeal, the D'Attilos settled their medical malpractice claim for $25 million. The D'Attilos hired the law firm of Day Pitney, LLP (Day Pitney) to advise them on various issues related to the settlement.
In February, 2015, the plaintiffs filed grievance complaints against seven attorneys-five from KK & B and two from Day Pitney. The grievances alleged that the KK & B attorneys had taken a 28 percent contingency fee from the D'Attilos' $25 million settlement proceeds rather than the approximately 10 percent fee permitted under the fee cap statute, General Statutes § 52-251c. The statewide bar counsel referred the plaintiffs' complaints against the five KK & B attorneys to a Fairfield grievance panel and the complaints against the two Day Pitney attorneys to a Stamford grievance panel.
On July 17, 2015, the Fairfield Judicial District Grievance Panel issued decisions finding probable cause that two of the five KK & B attorneys had violated the Rules of Professional Conduct. The panel found no probable cause that the remaining three KK & B attorneys had engaged in professional misconduct.
On August 26, 2015, the Stamford-Norwalk Judicial District Grievance Panel found no probable cause that **634 either of the Day Pitney attorneys had engaged in professional misconduct.
On January 4, 2016, the plaintiffs filed the present complaint against the Connecticut Statewide Grievance Committee, the statewide bar counsel, the Stamford-Norwalk Judicial District Grievance Panel, its counsel Eugene J. Riccio, the Fairfield Judicial District Grievance Panel, its counsel Steven P. Kulas, the chief disciplinary counsel, and the Office of the Chief Disciplinary Counsel. The plaintiffs claim that the defendant grievance panels violated Practice Book § 2-32(i)(2) by dismissing the plaintiffs' grievance complaints rather than forwarding them to the Statewide Grievance Committee for further review. The plaintiffs claim that their grievances alleged that the KK & B and Day Pitney attorneys engaged in criminal conduct; therefore the defendant grievance panels should not have dismissed their complaints and the other defendants had no power to accept the dismissals.
In count one of their complaint, the plaintiffs seek relief by way of mandamus, ordering the defendant grievance panels to "reissue their [decisions] removing the complete or partial dismissals of the above *736 attorneys pursuant to Practice Book § 2-32(i)(2), and then forwarding the grievance files in their entirety for the seven grievances listed [in the amended complaint] for further review pursuant to Practice Book § 2-34A(b)(1)."
In count two, plaintiffs seek relief by way of a temporary or permanent injunction preventing the grievance defendants from taking any further action, and exercising the court's inherent power "to take over all of the D'Attilo grievances against the Day Pitney and KK & B respondents, to hold a scheduling conference, and to proceed toward a hearing on all grievances as this court directs."
**635 The defendants have moved to dismiss the plaintiffs' complaint for lack of standing. The plaintiffs filed their opposition, with documentary exhibits, on March 21, 2016. The parties were heard at oral argument on April 11, 2016.
II
STANDARD OF REVIEW
"A motion to dismiss ... properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Internal quotation marks omitted.) Columbia Air Services, Inc. v. Dept. of Transportation , 293 Conn. 342, 346, 977 A.2d 636 (2009). A motion to dismiss may be brought to assert, inter alia, "lack of jurisdiction over the subject matter ...." Practice Book § 10-30(a)(1). "[T]he plaintiff bears the burden of proving subject matter jurisdiction, whenever and however raised." (Internal quotation marks omitted.) Fort Trumbull Conservancy, LLC v. New London , 265 Conn. 423, 430 n.12, 829 A.2d 801 (2003).
"The requirement of subject matter jurisdiction cannot be waived by any party and can be raised at any stage in the proceedings." (Internal quotation marks omitted.) Burton v. Commissioner of Environmental Protection , 291 Conn. 789, 802, 970 A.2d 640 (2009) ; see Carraway v. Commissioner of Correction , 317 Conn. 594, 601 n.9, 119 A.3d 1153 (2015) ; see also Practice Book § 10-33 (lack of subject matter jurisdiction cannot be waived). "Whenever the absence of jurisdiction is brought to the notice of the court or tribunal, cognizance of it must be taken and the matter passed upon before it can move one further step in the cause; as any movement is necessarily the exercise of jurisdiction." (Internal quotation marks omitted.)
**636 Federal Deposit Ins. Co. v. Peabody N.E., Inc. , 239 Conn. 93, 99, 680 A.2d 1321 (1996). Because standing implicates the court's subject matter jurisdiction, it is a proper basis for granting a motion to dismiss. Electrical Contractors, Inc. v. Dept. of Education , 303 Conn. 402, 413, 35 A.3d 188 (2012) ; Connecticut Associated Builders & Contractors v. Anson , 251 Conn. 202, 205-206, 740 A.2d 804 (1999).
In reviewing a motion to dismiss, the court must presume "the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." Sullins v. Rodriguez , 281 Conn. 128, 132, 913 A.2d 415 (2007). "[W]henever a court discovers that it has no jurisdiction, it is bound to dismiss the case ...." (Internal quotation marks omitted.) Pet v. Department of Health Services , 207 Conn. 346, 351, 542 A.2d 672 (1988).
III
ANALYSIS
"Standing is the legal right to set judicial machinery in motion." (Internal *737 quotation marks omitted.) Briggs v. McWeeny , 260 Conn. 296, 308, 796 A.2d 516 (2002). "One cannot rightfully invoke the jurisdiction of the court unless [one] has, in an individual or representative capacity, some real interest in the cause of action .... Standing is established by showing that the party claiming it [1] is authorized by statute to bring suit or [2] is classically aggrieved." (Internal quotation marks omitted.) Id.
When a plaintiff is neither statutorily nor classically aggrieved, the court lacks subject matter jurisdiction over his claims.
A
Statutory Aggrievement
"Statutory aggrievement ... exists by legislative fiat, not by judicial analysis of the particular facts of the **637 case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation." (Internal quotation marks omitted.) Lewis v. Slack , 110 Conn. App. 641, 644, 955 A.2d 620, cert. denied, 289 Conn. 953, 961 A.2d 417 (2008).
In determining whether a statute regulating certain conduct also affords a private remedy, Connecticut courts generally hold to the rule that when the legislature intends to create a new cause of action it does so explicitly in the statute itself. Antinerella v. Rioux , 229 Conn. 479, 495, 642 A.2d 699 (1994), overruled on other grounds by Miller v. Egan , 265 Conn. 301, 325, 828 A.2d 549 (2003).
Although the operating presumption is that a statute does not create a private right of action unless explicitly stated, that presumption may be overcome on rare occasions. See Provencher v. Enfield , 284 Conn. 772, 780, 936 A.2d 625 (2007) ("it is a rare occasion that [the Connecticut Supreme Court] will be persuaded that the legislature intended to create something as significant as a private right of action but chose not to express such an intent in the statute"). In Napoletano v. CIGNA Healthcare of Connecticut, Inc. , 238 Conn. 216, 249, 680 A.2d 127 (1996) (overruled on other grounds by Batte-Holmgren v. Commissioner of Public Health , 281 Conn. 277, 284-85, 914 A.2d 996 [2007] ), cert. denied, 520 U.S. 1103, 117 S. Ct. 1106, 137 L.Ed. 2d 308 (1997), the Connecticut Supreme Court held that a party asserting the existence of an implicit private remedy must satisfy an exacting three part test: "First, is the plaintiff one of the class for whose ... benefit the statute was enacted ... ? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? ... Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?"
**638 (Internal quotation marks omitted.) Rollins v. People's Bank Corp. , 283 Conn. 136, 142, 925 A.2d 315 (2007).
Additionally, in order to overcome the presumption that no private right of action is implied in the statutory enactment, the plaintiff must demonstrate that "no factor weighs against affording an implied right of action and [that] the balance of factors weighs in [the plaintiffs'] favor." (Internal quotation marks omitted.) Id. "In examining these three factors, each is not necessarily entitled to equal weight. Clearly, these factors overlap to some extent with each other, in that the ultimate question is whether there is sufficient evidence that the legislature intended to authorize [the plaintiff] to bring a private cause of action despite having failed expressly to provide for one." (Internal quotation marks omitted.) Id.
*738 Applying the Napoletano factors to the present case, it appears that the plaintiffs are within the class of persons intended to be protected by the grievance process established under General Statutes § 51-90g and the parallel rules of practice. That process was created "to protect the public and the court from unfit practitioners." Massameno v. Statewide Grievance Committee , 234 Conn. 539, 554, 663 A.2d 317 (1995). Plainly, the plaintiffs are members of the public who have had dealings with a legal practitioner that they consider to be unfit. Cf. Pane v. Danbury , 267 Conn. 669, 680, 841 A.2d 684 (2004) (the class of persons for whom Freedom of Information Act was enacted "consists of members of the general public who desire information about the conduct of their government"), overruled on other grounds by Grady v. Somers , 294 Conn. 324, 349, 984 A.2d 684 (2009). Accordingly, the first Napoletano factor is satisfied or, at the very least, does not weigh against recognizing a private remedy for these plaintiffs.
Turning to the second Napoletano factor, the plaintiffs concede that there is no provision in either the **639 Practice Book rules or the General Statutes that expressly grants them permission to commence a civil action of any sort to challenge the dismissal of an attorney grievance complaint. Also, the parties have not provided anything in the nature of a "legislative history" that would contain an expression of intent (or lack thereof) to create such a remedy. The record before this court is silent in this respect, and therefore fails to indicate any intent to create a private right to challenge Statewide Grievance Committee decisions or procedure.
In seeking to discern the intent behind a legislative enactment, the court may also look to the "circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) Maxwell v. Freedom of Information Commission , 260 Conn. 143, 147-48, 794 A.2d 535 (2002).
General Statutes § 51-90e grants any person the right to file a written complaint alleging attorney misconduct. From that point forward, by design, further action on the complaint becomes the responsibility of the statewide bar counsel, not the complainant. Should proceedings be conducted, § 51-90g(b) and General Statutes § 51-90h expressly define the role of the complainant in those grievance proceedings. Section 51-90g(b) grants the complainant the right to be present and represented by counsel at all hearings, and the opportunity to make a statement at the conclusion of the evidence. Section 51-90h grants a complainant a right to submit a statement in support or against any proposed decision. Had the legislature intended the complainant to have some right to challenge the outcome of any proceeding, or to challenge procedural irregularities in any proceeding, it could have easily inserted appropriate **640 provisions. The fact that it did not militates against any finding of legislative intent to create a private remedy for the complainant.
In this case, the plaintiffs seek review of the defendant grievance panels' alleged violation of Practice Book § 2-32(i)(2) in dismissing the plaintiffs' grievance complaints rather than forwarding them to the Statewide Grievance Committee for further review. It is undisputed that § 2-32(i) makes no mention whatsoever of a complainants' right to appeal that determination. However, a similar or parallel provision, § 2-32(c), expressly states that where the statewide bar counsel dismisses a complaint pursuant to § 2-32(a)(2), the "complainant shall have fourteen days ... to *739 file an appeal of the dismissal " with the statewide bar counsel. (Emphasis added.) The fact that § 2-32(c) expressly provides for an appeal by the complainant, whereas § 2-32(i) -in which a grievance panel dismisses a complaint pursuant to § 2-32(a)(1) -makes no mention of any right of appeal, compels a conclusion that the omission in § 2-32(i) was deliberate and that no intent can be implied to grant the complainant a right to seek a review of the dismissal. See State v. Kevalis , 313 Conn. 590, 603, 99 A.3d 196 (2014) ("[w]here a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject ... is significant to show that a different intention existed" [internal quotation marks omitted] ).
The court concludes with respect to the second Napoletano factor that the plaintiffs have failed to demonstrate that either the legislature or the drafters of the Practice Book rules evidenced any intention, express or implicit, to grant a complainant the right to seek review of a dismissal of a grievance complaint by a grievance panel.
**641 Finally, turning to the third Napoletano factor (consistency of a private cause of action with the underlying purpose of the legislative scheme), the plaintiffs suggest that finding an implicit right to challenge a dismissal through appeal, writ, or injunction is consistent with the underlying purposes of the legislative scheme in that it gives those who file complaints "remedies to protect their rights." The argument appears to be that, without the remedy of an appeal from a dismissal, persons who file grievance complaints will be denied procedural rights to appear and be heard, and deprived of any chance of restitution ("the grievance defendants' failure to follow the law and the rules has denied the plaintiff specific procedural rights as well as the extreme likelihood that the grievances will result in restitution and an accounting").
At the outset, although an award of restitution may be a "virtual certainty" in cases where attorney misconduct relates to moneys properly due to a client, it is not a "right" guaranteed to a person making a grievance complaint. A statutory right of action cannot be implied in a statute to protect a "right" that is not expressly stated in that statute. As to the denial of "procedural rights" which are expressed in the statutes, those same statutes authorize the Statewide Grievance Committee to adopt rules of procedure as a mechanism for protecting procedural rights. See General Statutes § 51-90a. It has not been shown how creating a remedy of appeal by the complainant for procedural deviations is consistent with an evident statutory scheme to vest authority for creating and implementing the procedural framework for grievance proceedings in the Statewide Grievance Committee.
The attorney disciplinary process exists "within the broader framework of the relationship between attorneys and the judiciary.... This unique position as officers and commissioners of the court ... casts **642 attorneys in a special relationship with the judiciary and subjects them to its discipline." (Internal quotation marks omitted.) Massameno v. Statewide Grievance Committee , supra, 234 Conn. at 554, 663 A.2d 317. Thus, an attorney grievance proceeding is not a civil action whose objective is to provide restitution to a victim or redress civil wrongs inflicted upon a victim. Its purpose is to investigate and regulate the conduct of court officers in order to safeguard the courts from persons unfit to practice before them. See In re Application of Pagano , 207 Conn. 336, 339, 541 A.2d 104 (1988), abrogated in part on other grounds by *740 Scott v. State Bar Examining Committee , 220 Conn. 812, 823-24 n.8, 601 A.2d 1021 (1992). Against this background, granting an individual complainant the right to challenge the outcome of the grievance process is not necessarily consistent with the underlying purposes of the scheme of attorney discipline. A person who files an attorney grievance has only a limited role in the resulting proceedings. It is not essential to superintending the relationship between an attorney and the court that the client/complainant have a right to challenge the outcome of those proceedings. Input from the complaining party is a logical component of the attorney discipline process. Granting the complainant the right to challenge, or appeal from, the outcome of the process, is not.
For these reasons, the court concludes with respect to the third Napoletano factor that the plaintiffs have failed to demonstrate that the implication of a remedy of appeal by a complaining party from a local panel's dismissal of a grievance complaint is consistent with the underlying purposes of the disciplinary process.
"[A]s the party seeking to invoke an implied right of action, the plaintiffs bear the burden of demonstrating that such an action is created implicitly in the statute." Asylum Hill Problem Solving Revitalization Assn. v. King , 277 Conn. 238, 246, 890 A.2d 522 (2006). The **643 plaintiffs have not carried their burden and have not met the rigorous requirements for creation of a private cause of action by implication from the enactment of a statute. They have not shown statutory aggrievement.
B
Classical Aggrievement
"Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved ... The fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the subject matter of the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action].... Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest ... has been adversely affected." (Internal quotation marks omitted.) May v. Coffey , 291 Conn. 106, 112, 967 A.2d 495 (2009).
The relevant case authority has repeatedly held that persons filing attorney grievance complaints lack any cognizable specific, personal and legal interest in the discipline of an attorney. See, e.g., Rousseau v. Statewide Grievance Committee , 163 Conn. App. 765, 769-71, 133 A.3d 947, cert. denied, 321 Conn. 908, 135 A.3d 280 (2016) ; Lewis v. Slack , supra, 110 Conn. App. at 647-48, 955 A.2d 620.
The plaintiffs attempt to distinguish these cases and establish a specific personal and legal interest in the decision as to whether to discipline the grieved attorneys **644 in their particular case. They argue that since they are entitled to-and will invariably receive-an award of restitution if their complaint is reviewed by the Statewide Grievance Committee, the decision as to whether to discipline these attorneys directly affects the plaintiffs' receipt of monetary restitution, which is an interest separate and apart from that of the *741 general public. On this basis, the plaintiffs argue, they have been "harmed in a unique fashion" by the conduct of the defendants and have established a "colorable claim of injury ...." (Internal quotation marks omitted.) Lewis v. Slack , supra, 110 Conn. App. at 647, 955 A.2d 620.
The court is not persuaded. Regardless of the statistical probabilities the plaintiffs may bring to bear, the potential for restitution is theoretical and conjectural, rather than established fact. It is impossible to know with certainty whether the Statewide Grievance Committee, if it conducted a review, would ultimately decide to discipline the attorneys involved, much less the sanctions or penalties the Statewide Grievance Committee, in its discretion, would deem appropriate for the offense. Under the statutes, rules and case law governing attorney grievance proceedings, the plaintiffs have no legally protected right to restitution. Moreover, the decision as to whether or not to require restitution from a grieved attorney is made in the context of a sanction or punitive measure, and not for the purpose of compensating the victim. It is the interest in appropriate attorney discipline that is arguably affected by the decision to require restitution-not the financial interest of the person making the complaint. In that regard, the plaintiffs' stake in the outcome of these proceedings is no different from that of all members of the community-that attorney misconduct be discouraged and deterred through a comprehensive system of attorney discipline.
The plaintiffs cannot demonstrate a colorable claim of injury to an interest which is arguably protected by **645 the statute in question and, therefore, have failed to establish classical aggrievement.
C
Exercise of Discretionary Authority To Intervene in Grievance Proceedings
In the alternative, the plaintiffs suggest that this court has inherent equitable powers that would permit it, in certain circumstances, to intervene, investigate, and control the attorney discipline process. To alleviate the "cumulative effect" of the defendants' purported multiple abuses of discretion, the plaintiffs urge the court to exercise those powers and "take over the grievance process" in this case in order to "protect [the] rights" of the plaintiff. The exact "rights" that would be protected by this court (acting in place of the Statewide Grievance Committee) are not specified; the court assumes it would be protection of the plaintiffs' "near certain" potential for an award of restitution. But, as already explained, attorneys are not disciplined by the courts so as to compensate a victimized client, and the plaintiffs have already commenced a separate civil action to recover compensation for any losses attributable to misconduct of their attorneys.
This court, in the exercise of its discretion, declines to invoke its inherent powers to displace the ongoing disciplinary process. Discretion involves "something more than leeway in decision-making.... It means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." (Internal quotation marks omitted.) Tuccio v. Garamella , 114 Conn. App. 205, 209, 969 A.2d 190 (2009).
It is true that judges possess the inherent authority to regulate attorney conduct and to discipline members of the bar, and that is a responsibility this court takes **646 quite seriously. However, "[i]n exercising *742 their inherent supervisory authority, the judges have authorized grievance panels and reviewing committees to investigate allegations of attorney misconduct and to make determinations of probable cause.... In carrying out these responsibilities, these bodies act as an arm of the court." (Internal quotation marks omitted.) Simms v. Seaman , 308 Conn. 523, 552-53, 69 A.3d 880 (2013). "Allowing parties to circumvent the established grievance procedures, at least in the absence of a compelling justification for doing so, would so undermine the process as to render it ineffectual. Such a result reasonably could not have been contemplated by the framers of the administrative scheme, who created the [Statewide Grievance Committee] and its subcommittees to act as an arm of the court in safeguarding the administration of justice, preserving public confidence in the system, and protecting the public and the court from unfit practitioners." Johnson v. Statewide Grievance Committee , 248 Conn. 87, 99-100, 726 A.2d 1154 (1999).
The case the plaintiffs have cited, Bradley v. Statewide Grievance Committee , Superior Court, judicial district of New Haven, Docket No. CV-08-4029843-S, 2008 WL 2967075 (July 14, 2008) (45 Conn. L. Rptr. 846), highlights the exceptional and extremely serious circumstances warranting court intervention in the established grievance process: "Although a complainant, under certain circumstances may have an equitable right of review, such is not necessarily the case when a complainant is seeking judicial review of the [Statewide Grievance Committee's] dismissal of her complaint. See also Pinsky v. Statewide Grievance Committee , 216 Conn. 228, 234 n.4, 578 A.2d 1075 (1990) (court observed that plaintiff may not be able to use equitable arguments to obtain judicial review of 'the decision of the [Statewide Grievance Committee] dismissing her complaint against her former attorney [a]s the complainant, her interest in **647 that decision was not equivalent to the right of an attorney ... in preserving his professional reputation'). While it is true that the judiciary has the powers necessary to grant review of acts violating constitutional rights under article fifth of the Connecticut constitution, courts may only use these powers if 'egregious and otherwise irreparable violations of state and federal constitutional guarantees are being or have been committed by such proceedings.' ... Circle Lanes of Fairfield, Inc. v. Fay , [195 Conn. 534, 542-43, 489 A.2d 363 (1985) ]."
The court is keenly aware of the plaintiffs' frustration with and disappointment in the handling, if not the outcome, of the grievance proceedings. The facts and circumstances outlined in the complaint, if true, are deplorable. But these proceedings are not marked by "egregious and otherwise irreparable violations of state and federal constitutional guarantees." Mere disagreement with how the grievance process has been handled, standing alone, does not provide appropriate justification for this court to supplant or usurp the established disciplinary process.
IV
CONCLUSION
Because the plaintiffs are neither statutorily nor classically aggrieved, the court lacks subject matter jurisdiction over their claims. The motion to dismiss is therefore granted.

We note that the present action was commenced on behalf of Daniel Jacob D'Attilo, a minor child, by and through his parents, Cathy M. D'Attilo and Domenic D'Attilo, as next friends. We further note that Cathy M. D'Attilo and Domenic D'Attilo are also named as plaintiffs in their individual capacity. For the sake of simplicity, we refer to these parties collectively as the plaintiffs and to them individually by name.

The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199(c) and Practice Book § 65-1.

In addition to the Statewide Grievance Committee, the Fairfield Panel, and the Stamford Panel, the plaintiffs also named as defendants: Michael P. Bowler, in his official capacity as statewide bar counsel; Eugene J. Riccio, in his official capacity as counsel for the Stamford panel; Steven P. Kulas, in his official capacity as counsel for the Fairfield panel; the Office of the Chief Disciplinary Counsel; and Karyl L. Carrasquilla, in her official capacity as chief disciplinary counsel. For the sake of convenience, we refer to these parties collectively as the defendants and, where appropriate, individually by title.

General Statutes § 51-90g(f) provides: "The subcommittee shall submit its proposed decision to the State-Wide Grievance Committee, with copies to the complainant and respondent. The proposed decision shall be a matter of public record."

General Statutes § 51-90h provides in relevant part: "(a) Within fourteen days of the issuance to the parties of the proposed decision, the complainant and respondent may submit to the State-Wide Grievance Committee a statement in support of, or in opposition to, the proposed decision. The State-Wide Grievance Committee may, in its discretion, request oral argument.
"(b) Within sixty days after the end of the fourteen-day period for the filing of statements, the State-Wide Grievance Committee shall review the record before the subcommittee and any statements filed with it, and shall issue a decision dismissing the complaint, reprimanding the respondent, imposing conditions in accordance with the rules established by the judges of the Superior Court, directing the State-Wide Bar Counsel to file a presentment against the respondent or referring the complaint to the same or a different reviewing subcommittee for further investigation and proposed decision ...."

Practice Book § 2-32(i) provides: "The panel shall, within 110 days from the date the complaint was referred to it, unless such time is extended pursuant to subsection (j), do one of the following: (1) If the panel determines that probable cause exists that the respondent is guilty of misconduct, it shall file the following with the statewide grievance committee and with the disciplinary counsel: (A) its written determination that probable cause exists that the respondent is guilty of misconduct, (B) a copy of the complaint and response, (C) a transcript of any testimony heard by the panel, (D) a copy of any investigatory file and copies of any documents, transcripts or other written materials which were available to the panel. These materials shall constitute the panel's record in the case. (2) If the panel determines that no probable cause exists that the respondent is guilty of misconduct, it shall dismiss the complaint unless there is an allegation in the complaint that the respondent committed a crime. Such dismissal shall be final and there shall be no review of the matter by the statewide grievance committee, but the panel shall file with the statewide grievance committee a copy of its decision dismissing the complaint and the materials set forth in subsection (i)(1)(B), (C) and (D). In cases in which there is an allegation in the complaint that the respondent committed a crime, the panel shall file with the statewide grievance committee and with disciplinary counsel its written determination that no probable cause exists and the materials set forth in subsection (i)(1)(B), (C) and (D). These materials shall constitute the panel's record in the case."

Practice Book § 2-34A(b)(1) provides in relevant part: "When, after a determination of no probable cause by a grievance panel, a complaint is forwarded to the statewide grievance committee because it contains an allegation that the respondent committed a crime, and the statewide grievance committee or a reviewing committee determines that a hearing shall be held concerning the complaint pursuant to Section 2-35(c), the disciplinary counsel shall present the matter to such committee."

We note that, although the trial court addressed the substance of count two of the complaint and, "in the exercise of its discretion, decline[d] to invoke its inherent powers to displace the ongoing disciplinary process"; see Burton v. Mottolese , 267 Conn. 1, 28, 835 A.2d 998 (2003), cert. denied, 541 U.S. 1073, 124 S.Ct. 2422, 158 L.Ed.2d 983 (2004) ; it ultimately dismissed that count of the complaint on the ground that the plaintiffs lacked standing to affirmatively request such relief.

General Statutes § 51-90g(a) provides: "The State-Wide Grievance Committee may designate at least three members of the committee, including at least one-third who are not attorneys, to serve as a reviewing subcommittee for each determination made by a panel on a complaint. The committee shall regularly rotate membership on reviewing subcommittees and assignments of complaints from the various judicial districts. The State-Wide Grievance Committee or the subcommittee, if any, shall hold a hearing concerning the complaint if the panel determined that probable cause exists that the attorney is guilty of misconduct. If the grievance panel determined that probable cause does not exist that the attorney is guilty of misconduct, the committee or subcommittee shall review the determination of no probable cause, take evidence if it deems it appropriate and, if it determines that probable cause does exist that the attorney is guilty of misconduct, shall take the following action: (1) If the State-Wide Grievance Committee reviewed the determination of the grievance panel it shall hold a hearing concerning the complaint or assign the matter to a subcommittee to hold the hearing; or (2) if a subcommittee reviewed the determination of the grievance panel it shall hold a hearing concerning the complaint or refer the matter to the State-Wide Grievance Committee which shall assign it to another subcommittee to hold the hearing. The committee or subcommittee shall not make a probable cause determination based, in full or in part, on a claim of misconduct not alleged in the complaint without first notifying the respondent that it is considering such action and affording the respondent the opportunity to be heard. An attorney who maintains his office for the practice of law in the same judicial district as the respondent may not sit on the reviewing subcommittee for that case."

Affirmed. D'Attilo v. Statewide Grievance Committee , 329 Conn. 624, 188 A.3d 727 (2018).