******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# WEINSHEL, WYNNICK & ASSOCIATES, LLC *v.* MARIE BONGIORNO ET AL.
## (AC 41467)

Keller, Bright and Flynn, Js.

*Syllabus*

The plaintiff, an accounting firm, sought to recover damages from the defendant G, his wife, the defendant M, and L Co., a limited liability company, for unpaid accounting services. G was the owner and operator of B Co., a liquor store, with which the plaintiff had a long standing service contract. In 2010, G created L Co., of which he was the sole member and, in July 2012, he transferred all of his interest in L Co. to M exclusively. L Co. became the backer for B Co. and M took control over B Co.'s operations. During this change in ownership, the plaintiff billed B Co. for accounting services in June, 2012. After the services went unpaid, the plaintiff commenced the present action against the defendants in December, 2012. Thereafter, G died during the action's pendency, and M, as executrix of G's estate, was substituted as a defendant. The trial court rendered judgment in favor of the plaintiff as against L Co., but not against M, individually or as executrix. On appeal, the plaintiff claimed, inter alia, that the trial court improperly concluded that M could not be held personally liable for the plaintiff's damages pursuant to the theory of successor liability. *Held:*

1. The plaintiff could not prevail on its claim that because M failed to obtain approval from the Liquor Control Commission for her acquisition of G's interest in L Co., as required by state regulations, for the time prior to January 8, 2013, when the commission approved the transfer of the interest, M was operating B Co. in her individual capacity from August, 2012, until January, 2013, and was liable to the same extent as L Co. under a theory of successor liability: the plaintiff failed to provide any authority for its position that a party may seek to enforce a liquor control regulation by means of a private cause of action, or its claim that under the applicable statute regulation (§ 30-6-A4), an unapproved transfer of interest in a corporate backer of a liquor permit exposes the transferee to personal liability for the debts of the backer corporation, as § 30-6-A4 was enacted for the benefit of the public, not for the benefit of individuals engaged in private transactions with regulated entities, the sale of intoxicating liquors had no substantial relevance to the plaintiff's claim for breach of contract for unpaid accounting services, the health and safety concerns that undergird regulations such as § 30-6-A4 were not implicated in this case, and even if this court were to recognize a right to enforce a regulation by means of a private right of action, the plaintiff was not among the class of persons § 30-6-A4 was intended to protect, nor was the injury the type that the regulation was designed to prevent; moreover, to the extent that G and M failed to comply with § 30-6-A4, such nonfeasance was inconsequential to the plaintiff's dealings with L Co., and, thus, even if the transfer was invalid, that basis alone was insufficient to hold M personally liable for the plaintiff's damages.

2. The trial court improperly rendered judgment in favor of M in her capacity as executrix of G's estate on the basis of the statute (§ 52-599 [b]) concerning the survival of a cause of action when a party thereto dies, and its determination that because the substitution of M, as executrix, for G was untimely, it had discretion to render judgment in favor of M in her capacity as executrix: pursuant to the plain and unambiguous language of § 52-599 (b), the plaintiff had one year, following notice of the death of G, in which to apply for an order to substitute G with a representative of his estate, and because the record clearly indicated that an application to substitute a representative of the estate of the deceased defendant, G, was made within one year, it was timely and the trial court's finding to the contrary was clearly erroneous; moreover, because the motion to cite in a temporary administratrix of G's estate was timely, the court did not have discretion to render judgment in favor of M, executrix, on that basis, and should have rendered judgment

in favor of the plaintiff accordingly.

Argued March 18—officially released September 17, 2019

*Procedural History*

Action to recover damages for, inter alia, breach of contract, brought to the Superior Court in the district of Stamford; thereafter, the named defendant, the executrix of the estate of the defendant George Bongiorno, was substituted as a defendant; subsequently, the matter was tried to the court, *Hon. Kevin Tierney*, judge trial referee; judgment in part for the plaintiff, from which the plaintiff appealed. *Reversed in part; judgment directed.*

*Andrew M. McPherson*, for the appellant (plaintiff).

*Peter V. Lathouris*, for the appellees (defendants).

*Opinion*

KELLER, J. The plaintiff, Weinshel, Wynnick & Associates, LLC, appeals from the trial court's judgment in favor of the defendants, Marie Bongiorno, individually (Marie Bongiorno), and Marie Bongiorno, executrix of the estate of George Bongiorno (Marie Bongiorno, executrix),[1] on its claims of successor liability and breach of contract. On appeal, the plaintiff argues that the court improperly (1) concluded that Marie Bongiorno could not be held personally liable for the plaintiff's damages pursuant to a theory of successor liability, and (2) rendered judgment in favor of Marie Bongiorno, executrix, on the basis of General Statutes 52-599 (b). We affirm the judgment in favor of Marie Bongiorno, and reverse the judgment in favor of Marie Bongiorno, executrix.

The following facts, as found by the trial court, and procedural history are relevant to this appeal. The plaintiff is an accounting firm. In 1971, it was hired by George Bongiorno, the husband of Marie Bongiorno, to provide him with personal and business accounting services.[2] At the time, George Bongiorno, a successful businessman and investor, owned and operated with his brother, John Bongiorno, a supermarket in Stamford. At some point, George Bongiorno obtained a liquor permit and began operating a liquor store, Bongiorno Maxi Discount Liquors, in the same business complex as the supermarket.[3]

Until September, 2010, George Bongiorno operated the liquor store as a sole proprietorship. During this time, the plaintiff continued to provide accounting services and billed its services to Bongiorno Maxi Discount Liquors. On September 21, 2010, articles of organization were drafted for an entity named Marie's Liquors, LLC, and, on September 23, the articles were filed with the secretary of state. Marie's Liquors, LLC, was a member managed limited liability company, with George Bongiorno designated as its sole member. Shortly after the creation of Marie's Liquors, LLC, an application was submitted to the Department of Consumer Protection, Liquor Control Division, to change the backer[4] for Bongiorno Maxi Discount Liquors to the newly formed Marie's Liquors, LLC.[5] Despite the change in proprietorship, the business continued to operate under the name Bongiorno Maxi Discount Liquors. On October 14, 2010, George Bongiorno transferred all "right, title and interest" of his "membership units" in Marie's Liquors, LLC, to Marie Bongiorno.

On June 21, 2012, the plaintiff sent Bongiorno Maxi Discount Liquors three separate invoices for various accounting services. In total, the plaintiff billed Bongiorno Maxi Discount Liquors $36,075, with payment due in full by July 21, 2012. The parties do not dispute that the June 21, 2012 invoices were never paid.

On July 31, 2012, a purchase and sale agreement was

executed that purported to convey all of George Bongiorno's interest in Marie's Liquor, LLC, to Marie Bongiorno in consideration of one dollar.[6] The agreement also provided that George Bongiorno would resign as the sole member of Marie's Liquor, LLC, and that Marie Bongiorno would be made the sole member in his place. On October 12, 2012, Marie Bongiorno sent an "application for transfer of interest within a limited liability company" to the Liquor Control Division. The application indicated that Marie Bongiorno was acquiring all interest in Marie's Liquors, LLC, which was now the backer for Bongiorno Maxi Discount Liquors. On January 8, 2013, the Liquor Control Commission approved the transfer of interest in Marie's Liquors, LLC. Shortly thereafter, on February 28, 2013, Marie Bongiorno filed amended articles of organization with the secretary of state, naming herself as the sole member manager of Marie's Liquors, LLC.

Following the nonpayment of the June 21, 2012 invoices, the plaintiff commenced this action against Marie Bongiorno, George Bongiorno, and Marie's Liquors, LLC. In its original complaint, dated November 21, 2012, the plaintiff alleged, inter alia, that Marie Bongiorno was responsible for the unpaid invoices pursuant to an agreement that she had with the plaintiff. While the action was pending, George Bongiorno died and notice of his death was filed with the court on April 6, 2016.[7] On December 23, 2016, the plaintiff filed a motion to cite in the temporary administratrix, Susan Gottlin, of the estate of George Bongiorno. The plaintiff's motion was granted on January 9, 2017. Thereafter, on August 22, 2017, the plaintiff filed a motion to cite in Marie Bongiorno, executrix. In its motion, the plaintiff asserted that Marie Borgiorno, executrix, had replaced Gottlin as the representative for George Bongiorno's estate. The court granted the plaintiff's motion, and Marie Bongiorno, executrix, was served on September 14, 2017. Prior to trial, the plaintiff amended its complaint, alleging, among other things, breach of contract against the defendants and successor liability against Marie Bongiorno.

On November 15 and 16, 2017, a court trial was held before the court, *Hon. Kevin Tierney*, judge trial referee, during which one witness, Michael Weinshel, testified. Weinshel testified that he was a managing member of the plaintiff and had performed accounting services for Bongiorno Maxi Discount Liquors and the Bongiorno family for many years dating back to 1971. Through Weinshel's testimony, the plaintiff introduced into evidence several documents detailing the formation and ownership of Marie's Liquors, LLC. Other documents that were introduced included, inter alia, copies of the unpaid June 21, 2012 invoices; copies of checks made payable to the plaintiff from the Bongiorno Maxi Discount Liquors' checking account; and Marie Bongiorno's federal income tax returns, which reported

income from Bongiorno Maxi Discount Liquors in 2010, 2011, and 2012. The parties also executed a stipulation that provided: "All bills of Bongiorno's Maxi Discount Liquors that were incurred prior to the take over of the liquor store by Marie Bongiorno in August of 2012, with the exception of the bills of the plaintiff, were paid out of income of Bongiorno's Maxi Discount Liquors after take over." Following the close of evidence, the parties waived oral argument and submitted posttrial briefs.

In a memorandum of decision dated February 28, 2018, the court found that there was an agreement between the plaintiff and George Bongiorno and that the agreement had been breached by the nonpayment of the June 21, 2012 invoices, resulting in $36,075 in damages to the plaintiff.[8] The court rendered judgment in that amount against Marie's Liquors, LLC. As to Marie Bongiorno, however, the court found that she did not have an agreement with the plaintiff and, thus, was not responsible for the unpaid invoices pursuant to this claim. Although the court found that the plaintiff had established the necessary elements of its breach of contract claim against George Bongiorno, it nonetheless rendered judgment in favor of Marie Bongiorno, executrix, on this count. See General Statutes § 52-599 (a).[9] In providing the basis for its ruling, the court noted: "Marie Bongiorno as executrix of the estate of George Bongiorno was not joined as a party defendant in this litigation within six months of March 13, 2016. [General Statutes] § 52-599 (b). May 15, 2017, was the date of the appointment of Marie Bongiorno as executrix of the estate of George Bongiorno. Marie Bongiorno as executrix was not joined by the plaintiff as a party defendant in this litigation until August 29, 2017. . . . Because of the circumstances of this case, the claim of successor liability and the uncertainty of the status of the probate appeal against Marie Bongiorno as executrix . . . and the possibility of the appointment of a new fiduciary for the estate of George Bongiorno as a result of the Superior Court and Probate Court litigation, this court is reluctant to find liability in favor of the plaintiff as against the estate of George Bongiorno on the first count of breach of contract. The court does find as a fact that all the elements of a breach of contract have been met and that George Bongiorno, by failing to pay the $36,075.00, has breached the contract and damages in that amount have been sustained by the plaintiff."

"Marie Bongiorno was appointed the executrix of the estate of George Bongiorno by the Stamford Probate Court on May 15, 2017. . . . That Probate Court appointment and the admission of the underlying last will and testament of George Bongiorno is the subject of an appeal commenced in the Stamford Superior Court on May 25, 2017. . . . The plaintiffs in that probate appeal are Michele B. Nizzardo and Frank Bongiorno, two of the four children of George Bongiorno and

Marie Bongiorno. The defendant in that probate appeal is Marie Bongiorno, the executrix under the contested will, and one of the three defendants in this liquor store litigation. . . . This court is unsure of the status of fiduciary orders issued by the Probate Court, district of Stamford. In the event this probate appeal is successful, Marie Bongiorno may no longer be the executrix of the estate of George Bongiorno. A new fiduciary may then be appointed subject to appellate stays, if any. What a new fiduciary may do with this $36,075 claim is best left to speculation. Therefore, in order to satisfy the requirements of judicial economy and to bring to an end this relatively simple $36,075 accounting services collection lawsuit, the court will exercise its discretion and find no liability or damages against the decedent's estate of George Bongiorno."

The court also found in favor of Marie Bongiorno on the plaintiff's claim of successor liability. In so doing, the court acknowledged that, in accordance with the Regulations of Connecticut State Agencies, a permittee may be held strictly liable for conduct related to her permitted premises. The court found that the plaintiff failed to provide any authority, however, for the proposition that such regulations, which are related to the sale of intoxicating liquors, allowed the court to disregard the corporate structure of a business and hold its individual members personally liable for the company's contractual obligations. Therefore, although the court found that Marie's Liquors, LLC, was liable for the debts incurred by George Bongiorno pursuant to the plaintiff's claim of successor liability,[10] it concluded that there was inadequate legal support for concluding that Marie Bongiorno could be held personally liable under the same theory. This appeal followed.

I

The plaintiff first argues on appeal that the court improperly concluded that Marie Bongiorno could not be held personally liable for the plaintiff's damages pursuant to a theory of successor liability. Specifically, the plaintiff claims that Marie Bongiorno failed to obtain approval from the Liquor Control Division for her acquisition of George Bongiorno's interest in Marie's Liquors, LLC, as required by the Regulations of Connecticut State Agencies, until January 8, 2013.[11] The plaintiff contends that, in the absence of approval from the Liquor Control Division, Marie Bongiorno was operating Bongiorno Maxi Discount Liquors in her individual capacity from August, 2012, until January, 2013, and is liable to the same extent as Marie's Liquor's, LLC, under a theory of successor liability, for the plaintiff's damages. We are not persuaded and, accordingly, affirm the judgment of the trial court.

We begin by setting forth the standard of review and legal principles that guide our analysis. Because the court's judgment was premised on the legal conclusion

that Marie Bongiorno could not be held personally responsible for the plaintiff's damages under a theory of successor liability, our review is plenary. "This court affords plenary review to conclusions of law reached by the trial court. . . . Under plenary review, we must decide whether the trial court's conclusions of law are legally and logically correct and find support in the record." (Internal quotation marks omitted.) *Joyner* v. *Simkins Industries, Inc.*, 111 Conn. App. 93, 97, 957 A.2d 882 (2008).

With respect to the plaintiff's claim of successor liability against Marie Bongiorno, "[t]he general rule is that where a corporation sells or otherwise transfers all of its assets, its transferee is not liable for the debts and liabilities of the transferor, and that [the] liability of a new corporation for the debts of another corporation does not result from the mere fact that the former is organized to succeed the latter. . . . This general rule of corporate nonliability serves, in effect, as a security blanket that protects corporate successors from unknown or contingent liabilities of their predecessors. . . .

"The rule is nonetheless subject to four well established exceptions. A successor . . . may be held liable for the debts and liabilities of its predecessor when there is an express or implied assumption of liability, the transaction amounts to a consolidation or merger, the transaction is fraudulent, or the transferee corporation is a mere continuation or reincarnation of the old corporation." (Internal quotation marks omitted.) *Robbins* v. *Physicians for Women's Health, LLC*, 311 Conn. 707, 715, 90 A.3d 925 (2014).

"There are two theories used to determine whether the purchaser is merely a continuation of the selling corporation. Under the common law mere continuation theory, successor liability attaches when the plaintiff demonstrates the existence of a single corporation after the transfer of assets, with an identity of stock, stockholders, and directors between the successor and predecessor corporations. . . . Under the continuity of enterprise theory, a mere continuation exists if the successor maintains the same business, with the same employees doing the same jobs, under the same supervisors, working conditions, and production processes, and produces the same products for the same customers." (Citations omitted; internal quotation marks omitted.) *Chamlink Corp.* v. *Merritt Extruder Corp.*, 96 Conn. App. 183, 187–88, 899 A.2d 90 (2006).

In its memorandum of decision, the court found that the plaintiff had proven its claim of successor liability against Marie's Liquors, LLC, under both the mere continuation theory and the continuity of enterprise theory. It found that Marie's Liquors, LLC, was the current backer for the liquor permit. The former backer was Bongiorno Maxi Discount Liquors. Despite the change

in proprietorship, the store continued to operate under the name "Bongiorno Maxi Discount Liquors." Moreover, "[t]he same store manager, the same store employees, the same business location, the same landlord, the same shelving, and the former liquor supply were all continued without cessation. Most importantly the same liquor permit and liquor permit number was transferred. There was no need to go through a full liquor permit process, which would have required showing the source of purchase funds, source of business capital, background information, letters of recommendation, and the like since this was a continuation of the Bongiorno liquor business from one family member to another."

Although the parties stipulated that, following the July 31, 2012 purchase and sale agreement, Marie Bongiorno took control of the liquor store and was the sole member of Marie's Liquors, LLC, the court concluded that she was shielded from individual liability in light of the corporate structure of the business. Moreover, the court noted that the plaintiff did not plead or offer sufficient evidence to pierce the corporate veil of Marie's Liquors, LLC, which would, thus, expose her to liability for the company's debts. As such, the court concluded that the plaintiff failed to provide adequate legal authority to support its claim of successor liability against Marie Bongiorno.

The plaintiff argues on appeal that the court improperly concluded that Marie Bongiorno could not be held liable because it failed to consider the fact that she did not obtain approval from the Liquor Control Division prior to her acquisition of George Bongiorno's interest in Marie's Liquors, LLC. Thus, for the period between August, 2012, and January, 2013, the plaintiff contends that Marie Bongiorno was operating the liquor store in her individual capacity. In support of this contention, the plaintiff cites § 30-6-A4 of the Regulations of Connecticut State Agencies, which provides in relevant part: "No transfer by sale or otherwise of any of the shares of stock of the backer corporation, or the corporation which has a financial interest in the backer, may be made or any additional shares of stock issued without notice to and approval by the department . . . ." The plaintiff claims that this regulation stands for the proposition that an unapproved transfer of interest in a corporate backer of a liquor permit exposes the transferee to personal liability for the debts of the backer corporation. We do not agree.

In arguing that the July 31, 2012 purchase and sale agreement was invalid pursuant to the language of § 30-6-A4, the plaintiff has provided this court with no authority for the position that a party may seek to enforce a liquor control regulation by means of a private cause of action. Further, the plaintiff has failed to address the factors set forth in *Napoletano* v. *CIGNA*

*Healthcare of Connecticut, Inc.*, 238 Conn. 216, 249, 680 A.2d 127 (1996), cert. denied, 520 U.S. 1103, 117 S. Ct. 1106, 137 L. Ed. 2d 308 (1997), overruled in part on other grounds by *Batte-Holmgren* v. *Commissioner of Public Health*, 281 Conn. 277, 284–85, 914 A.2d 996 (2007). In *Napoletano*, our Supreme Court held that a party asserting the existence of an implicit private remedy must satisfy an exacting three part test: "First, is the plaintiff one of the class for whose . . . benefit the statute was enacted . . . ? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . .  Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?" (Internal quotation marks omitted.) Id.

"Additionally, in order to overcome the presumption that no private right of action is implied in the statutory enactment, the plaintiff must demonstrate that no factor weighs against affording an implied right of action and [that] the balance of factors weighs in [the plaintiffs'] favor. . . .  In examining these three factors, each is not necessarily entitled to equal weight. Clearly, these factors overlap to some extent with each other, in that the ultimate question is whether there is sufficient evidence that the legislature intended to authorize [the plaintiff] to bring a private cause of action despite having failed expressly to provide for one." (Internal quotation marks omitted.) *D'Attilo* v. *Statewide Grievance Commission*, Superior Court, judicial district of Hartford, Docket No. CV-16-6065012 (July 18, 2016), aff'd, 329 Conn. 624, 188 A.3d 727 (2018).

Our review of existing precedent reveals that the Liquor Control Act, General Statutes §§ 30-1 through 30-116, and the regulations promulgated therefrom were enacted for the benefit of the public, not for the benefit of individuals engaged in private transactions with regulated entities. See *Eder Bros., Inc.* v. *Wine Merchants of Connecticut, Inc.*, 275 Conn. 363, 377, 880 A.2d 138 (2005) ("[i]ndeed, when a plaintiff has brought an action challenging the imposition of certain provisions of the Liquor Control Act due to an economic harm to their business, we have explained that the purpose of that act is to regulate the sale and consumption of alcohol for the protection of the public, not for the economic benefit of a particular wholesaler"); see also *All Brand Importers, Inc.* v. *Department of Liquor Control*, 213 Conn. 184, 211, 567 A.2d 1156 (1989) ("[i]t is fair to say that the liquor control laws are to be enforced for the benefit of the public and not for the economic benefit of the plaintiff"). Additionally, we note that the sale of intoxicating liquors has no substantial relevance to the gravamen of the plaintiff's claim. This is a breach of contract action for unpaid accounting services. The health and safety concerns that undergird regulations such as § 30-6-A4 are not implicated in this case. Accordingly, even if this court were to recognize a right to

enforce a regulation by means of a private right of action, the plaintiff is not among the class of persons § 30-6-A4 was intended to protect nor is the injury alleged of the type that the regulation was designed to prevent. Cf. *Gore* v. *People's Savings Bank*, 235 Conn. 360, 375–76, 665 A.2d 1341 (1995) ("It is well established that [i]n order to establish liability as a result of a statutory violation, a plaintiff must satisfy two conditions. First, the plaintiff must be within the class of persons protected by the statute. . . . Second, the injury must be of the type which the statute was intended to prevent." [Citations omitted; internal quotation marks omitted.]).

Moreover, even if we assume that the July 31, 2012 transfer was invalid until it was approved by the Liquor Control Division, the effect would have been George Bongiorno retaining his status as sole member of Marie's Liquors, LLC, during the interim. Concomitantly, Marie Bongiorno would have had no interest in the company. In that circumstance, we could perceive an argument that during such time Marie Bongiorno did not have the authority to act on the company's behalf and might be personally liable for any obligations she incurred. See *Rich-Taubman Associates.* v. *Commissioner of Revenue Services*, 236 Conn. 613, 619, 674 A.2d 805 (1996) ("To avoid personal liability, an agent must disclose to the party with whom he deals both the fact that he is acting in a representative capacity and the identity of his principal. . . . Accordingly, the agent is not liable where, acting within the scope of his authority, he contracts with a third party for a known principal." [Citations omitted; internal quotation marks omitted.]). It does not follow, however, that if Marie Bongiorno was operating the business without any interest in Marie's Liquors, LLC, she should be held personally responsible for the company's preexisting debts, such as those owed to the plaintiff. In this instance, the plaintiff performed accounting services pursuant to a longstanding agreement it had with George Bongiorno. The plaintiff's damages were incurred before the parties executed the allegedly unauthorized transfer of interest in Marie's Liquors, LLC, on July 31, 2012. To the extent that George and Marie Bongiorno failed to comply with § 30-6-A4, such nonfeasance was inconsequential to the plaintiff's dealings with the liquor store. Thus, even if we were to conclude that the July 31, 2012 purchase and sale agreement was invalid, this basis alone is insufficient to hold Marie Bongiorno personally liable for the plaintiff's damages.

In sum, the plaintiff has failed to convince us that the court improperly applied the law when it concluded that Marie Bongiorno was not personally liable for the plaintiff's damages. We, therefore, conclude that the court properly rendered judgment in favor of Marie Bongiorno on this claim.

## II

The plaintiff's second claim on appeal is that the court improperly rendered judgment in favor of Marie Bongiorno, executrix, on the basis of § 52-599 (b). In particular, the plaintiff argues that the court erred in finding that the substitution of Marie Bongiorno, executrix, for the deceased defendant George Bongiorno, was untimely and, thus, improperly concluded that it had discretion to render judgment in favor of Marie Bongiorno, executrix. We agree with the plaintiff that the court improperly interpreted § 52-599 (b) and, accordingly, reverse the judgment in favor of Marie Bongiorno, executrix.

"With regard to the trial court's factual findings, the clearly erroneous standard of review is appropriate. . . . A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . Simply put, we give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses. . . .

"The trial court's legal conclusions are subject to plenary review. [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *Miller* v. *Guimaraes*, 78 Conn. App. 760, 766–67, 829 A.2d 422 (2003).

"Although at common law the death of a sole plaintiff or defendant abated an action . . . by virtue of § 52-599, Connecticut's right of survival statute, a cause of action can survive if a representative of the decedent's estate is substituted for the decedent. It is a well established principle, however, that [d]uring the interval . . . between the death and the revival of the action by the appearance of the executor or administrator, the cause has no vitality. The surviving party and the court alike are powerless to proceed with it. . . . Moreover, the language of § 52-599, and its predecessor, has been construed to mean that the fiduciary may be substituted as a matter of right within the time prescribed by the statute, but the court in its discretion may permit the fiduciary to be substituted after the time described for good cause shown. . . . Statutes in derogation of the common law are remedial in nature and are to be liberally construed to implement their remedial purpose." (Citations omitted; internal quotation marks omitted.) *Negro* v. *Metas*, 110 Conn. App. 485, 497–98, 955 A.2d 599, cert. denied, 289 Conn. 949, 960 A.3d 1037 (2008).

Section 52-599 (b), provides that: "A civil action or proceeding shall not abate by reason of the death of

any party thereto, but may be continued by or against the executor or administrator of the decedent. If a party plaintiff dies, his executor or administrator may enter within six months of the plaintiff's death or at any time prior to the action commencing trial and prosecute the action in the same manner as his testator or intestate might have done if he had lived. If a party defendant dies, the plaintiff, *within one year* after receiving written notification of the defendant's death, may apply to the court in which the action is pending for an order to substitute the decedent's executor or administrator in the place of the decedent, and, upon due service and return of the order, the action may proceed." (Emphasis added.)

It is evident from the plain and unambiguous language of this statute, that the plaintiff had one year, following written notice of the death of George Bongiorno, in which to apply for an order to substitute the deceased party with the representative of his estate.[12] Although the court made no specific finding as to when written notice of George Bongiorno's death was provided to the plaintiff, it is undisputed that he died on March 13, 2016. Recognizing that this date was the earliest point at which such notice could have been provided, the record clearly indicates that the application to substitute the representative of the estate of George Bongiorno for the deceased defendant was made within one year.

As stated previously in this opinion, the plaintiff filed a motion to cite in Gottlin, the temporary adminstratrix of the estate of George Bongiorno on December 23, 2016.[13] This motion was granted on January 9, 2017. Thus, given the fact that the plaintiff's motion was filed within one year of George Bongiorno's death, it was undoubtedly timely pursuant to § 52-599 (b), irrespective of when written notice of his death was provided to the plaintiff, and the court's finding to the contrary was clearly erroneous. Further, because the plaintiff's motion was timely, the court did not have discretion to render judgment in favor of Marie Bongiorno, executrix, on this basis. *Dorsey* v. *Honeyman*, 141 Conn. 397, 400, 107 A.2d 260 (1954) ("the plaintiff [has] an absolute right to have the representative of a deceased defendant cited in within one year after the defendant's death, and thereafter it is within the power of the court to order him cited in if good cause is shown for the delay"). Indeed, having found that the plaintiff had established all the elements of its breach of contract claim against George Bongiorno, for which Marie Bongiorno, executrix, is liable pursuant to § 52-599 (a), it should have rendered judgment in favor of the plaintiff accordingly.

The judgment in favor of Marie Bongiorno, executrix, is reversed and the case is remanded with direction to render judgment in favor of the plaintiff as against Marie Bongiorno, executrix; the judgment is affirmed in all

other respects.

In this opinion the other judges concurred.

[1] The defendants Marie's Liquors, LLC, formerly Bongiorno Maxi Discount Liquors, and Samuel Starks, are also parties to this appeal; however, the plaintiff has appealed only from the portion of the judgment related to its claims against the defendants, Marie Bongiorno and Marie Bongiorno, executrix. Accordingly, in this opinion all references to the defendants are to the defendants, Marie Bongiorno and Marie Bongiorno, executrix.

[2] At trial, several "engagement letters" were admitted that evidenced a contract between the plaintiff and George Bongiorno. These letters, dated January 31, 2003, January 1, 2005, and January 1, 2010, provided that the parties' agreement would "remain in effect for future periods until changed by either party." The court found that no evidence was presented to establish a change or modification of the parties' agreement.

[3] George Bongiorno was the original permittee and backer for the liquor permit.

[4] General Statutes § 30-1 (4) provides: " 'Backer' means, except in cases where the permittee is himself the proprietor, the proprietor of any business or club, incorporated or unincorporated, engaged in the manufacture or sale of alcoholic liquor, in which business a permittee is associated, whether as employee, agent or part owner."

[5] Letters admitted into evidence at trial indicate that, at this time, George Bongiorno was no longer the permittee for the store's liquor license, having been replaced by Frank Bongiorno. George Bongiorno was still named as the backer.

[6] At trial, the parties stipulated that Marie Bongiorno took over the liquor store in August, 2012, effectively disregarding the October 14, 2010 transfer of all of George Bongiorno's "membership units" to Marie Bongiorno.

[7] The court found that George Bongiorno died on March 13, 2016.

[8] As against Marie's Liquors, LLC, the court also awarded prejudgment and postjudgment interest on this amount pursuant to General Statutes § 37-3a (a). As of the date of the memorandum of decision, the total amount due was $56,638.

[9] General Statutes § 52-599 (a) provides: "A cause or right of action shall not be lost or destroyed by the death of any person, but shall survive in favor of or against the executor or administrator of the deceased person."

[10] Specifically, the court found that the plaintiff had presented "persuasive evidence of successor liability under the continuity of enterprise theory and the theory that Marie's Liquors, LLC, [was] a mere continuation or reincarnation of the old business." Therefore, although Marie's Liquors, LLC, did not have a contract with the plaintiff for the provision of accounting services, it could be held liable as the successor to George Bongiorno, with whom the plaintiff had such a contract. On appeal, neither party challenges the court's findings as to the claim against Marie's Liquors, LLC.

[11] The defendants argue that the plaintiff failed to preserve this claim on appeal. Although we acknowledge that the court did not expressly address § 30-6-A4 of the Regulations of Connecticut State Agencies, our review of the record reveals that the court acknowledged the general precept that a permittee and backer are strictly liable for any legal violations related to their permitted premises. "Given that the sine qua non of preservation is fair notice to the trial court;" (internal quotation marks omitted) *MacDermid, Inc.* v. *Leonetti*, 328 Conn. 726, 738 n.7, 183 A.3d 611 (2018); we conclude that the plaintiff adequately preserved its claim, despite the fact that it was not asserted as distinctly and clearly as it could have been. See *Outlaw* v. *Meriden*, 43 Conn. App. 387, 390, 682 A.2d 1112, cert. denied, 239 Conn. 946, 686 A.2d 122 (1996).

[12] Accordingly, we note that the court incorrectly applied the six month time limitation to this action. It is clear from the language of the statute that the six month limitation applies only when it is a party plaintiff that has died; in cases involving deceased defendants, such as this case, the one year time limitation applies. This error alone is not dispositive, however, as we must address whether the plaintiff's application to substitute the representative of the estate of George Bongiorno for the deceased defendant was nonetheless filed within one year of the written notice of his death.

[13] We note that the motion to cite in Marie Bongiorno was filed on August 22, 2017, more than a year after the death of George Bongiorno. For the purposes of § 52-599 (b) however, the December 23, 2016 motion satisfied the statutory requirement of an application "for an order to substitute the decedent's executor or administrator in the place of the decedent," and,

thus, the date on which the plaintiff sought to cite in Marie Bongiorno, executrix, after she replaced the temporary administratrix, Gottlin, on May 15, 2017, is immaterial as to this issue on appeal.

––––––––––––––––––––––––––––––